KNUDSEN CORPORATION, a California corporation; and Dairy Fresh, Inc., a California corporation, Plaintiffs,

v.

EVER-FRESH FOODS, INC., a California corporation, et al., Defendants.

No. 71-641.

United States District Court,
C. D. California.

Dec. 16, 1971.

LaFollette, Johnson, Horgan & Robinson, and L. David Cole, Los Angeles, Cal., for plaintiffs.

Frieman, Rosenfeld & Zimmerman, Beverly Hills, Cal., for defendants.

## ORDER DENYING PRELIMINARY INJUNCTION

DAVID W. WILLIAMS, District Judge.

This is a civil action for a preliminary injunction. Plaintiff complains that defendants have engaged in a course of competitive business conduct which is unfair and in restraint of trade in violation of 15 U.S.C. §§ 15 and 26. The jurisdiction of this Court is invoked under 28 U.S.C. § 1337. This Court also has jurisdiction over plaintiff's pendent state claim for unfair competition.

Knudsen Corporation primarily engages in the processing and distribution of fluid milk and other dairy products. Dairy Fresh, Inc. (hereafter DFI) is Knudsen's wholly owned subsidiary and is engaged in purchasing delicatessen products from manufacturers and processors and distributing same to grocery chains and other buyers under its label.

Defendant Morris Rosenfeld was one of the principal owners of a shell egg and delicatessen distribution company named Dairy Fresh Products Company prior to January 15, 1968. On that date the company's assets used in the delicatessen business were purchased by Knudsen which subsequently organized it into a wholly owned subsidiary named Dairy Fresh, Inc. Part of the purchase agreement was a license which left Dairy Fresh Products Company free to continue its shell egg business.

Knudsen employed Rosenfeld in the capacity of vice-president for the newly acquired delicatessen subsidiary and placed him in charge of salesmen, warehousing activities and contact with customers. Rosenfeld remained in this position until November 16, 1970, when, after giving two weeks notice, he terminated his employment. At no time prior to his termination did Rosenfeld solicit any Knudsen or DFI employee to terminate their employment. Rosenfeld joined defendant George Rabinoff in a company which was destined to compete with the delicatessen distributing portion of Knudsen's business. The name of the competing company was Ever-Fresh Foods, Inc., a name that had been in trade existence and used by Dairy Fresh Products Company and its predecessor since 1948. Ever-Fresh was a wholly owned subsidiary of Cal-Maine Foods, Inc. of Mississippi. Cal-Maine was formed as a result of the corporate recapitalization of Dairy Fresh Products Company's shell egg business.

## NATURE OF DELICATESSEN BUSINESS

DFI and Ever-Fresh Foods, are competitors in the delicatessen business. Delicatessen products are perishable food and grocery items normally kept under refrigeration. They include cooked meats, cheese, salads, relishes and other specialty food items, some of which are processed in this country and others imported from other countries. These products find their way from the manufacturers, processors and importers to grocery stores through distributors and cooperatives. Some manufacturers and processors sell their products directly to large chains of super markets by delivering the product to the chain's warehouse.

Delicatessen product distributors are firms which usually purchase the products for resale for their own account. They ordinarily warehouse an inventory of a substantial number of such products and employ a sales force which calls upon and solicits business from grocery

stores and restaurants. Because of the perishable nature of the product the distributor will generally confine his activity to a certain geographical area such as Southern California.

### TRADE SECRETS

■ Plaintiff alleges that Rosenfeld, who was for three years vice president of DFI, is possessed of an intricate knowledge of trade secrets and confidential information regarding Knudsen's handling of DFI pricing, marketing and sales strategy. Plaintiff further complains that Rosenfeld knows DFI customer lists and how it deals with its customers and is using this information in the development of Ever-Fresh Foods, Inc.

There is no evidence of specific misuse of confidential information or trade secrets. On the contrary defendants have introduced evidence in the form of trade journals, reports of the proceedings of the Delicatessen Council of Southern California which shows that pricing and marketing strategies are matters of general knowledge in the delicatessen industry. Trade journals such as the Grocery Bulletin and the Grocer's Journal regularly print the names of all grocery stores, their delicatessen buyers and the prices on some delicatessen items. It is uncontroverted that competitors look at each other's price list in determining the price they will set. Thus the evidence clearly shows that those matters plaintiff refers to as confidential or trade secrets are within the purview of members of the delicatessen industry.

■ It is beyond question that the unauthorized use of trade secrets is enjoinable, but that which constitutes a trade secret must be determined from the facts of each case. *Sarkes Tarzian, Inc. v. Audio Devices, Inc.*, 166 F.Supp. 250 (S.D.Cal.1958). "The subject of a trade secret must be secret. Matters of public knowledge or of general knowledge in an industry cannot be appropriated by one as his secret." *Restatement Torts* § 757, Comment b at 6–7 (1939); *accord, Sarkes Tarzian, supra; Aetna*

*Building Maintenance Co. v. West*, 39 Cal.2d 198, 246 P.2d 11 (1952). Stated differently, "the knowledge cannot be placed in the public domain and still be retained as a 'secret.'" *Smith v. Dravo Corp.*, 203 F.2d 369 (7th Cir. 1953). In the case at bar the knowledge was clearly within the public domain. Neither customer lists, nor pricing practices, nor marketing and sales designs were purely confidential matters known to no other members of the delicatessen business. The mere fact that Rosenfeld worked for Knudsen at one time does not preclude him from competing on the basis of information generally available to members of the delicatessen industry. *Alex Foods v. Metcalfe*, 137 Cal.App.2d 415, 290 P.2d 646 (1955); *Sarkes Tarzian, supra*. As noted in *Restatement, Torts* § 757, Comment *a*, "the significant difference of fact between trade secrets and [those] which are not secret is that knowledge of the latter is available to the [user] without use of improper means to procure it, while knowledge of the former is usually available to him only by such means." As evidence of availability Judge Yankwich wrote, "where it appeared that the buyers are persons, such as wholesalers, whose names are readily known to the trade through directories, trade catalogues or otherwise, an employer's list which duplicates them is not necessarily secret or confidential (citing cases)." *Sarkes Tarzian, supra* 166 F.Supp. at 257. Defendant Rosenfeld who, during his 37 years in the delicatessen business helped to create the Delicatessen Council of Southern California had access to all the trade journals and knowledge of the trade practices involved in this action. The availability of this information to him obviates any need he might have to use improper means to procure it. The facts show the existence of no trade secret.

### ENTICEMENT OF PLAINTIFF'S EMPLOYEES

■ Plaintiff also complains that defendant has unlawfully and illegally en-

ticed several of its key employees to terminate their employment with DFI and join Ever-Fresh. Rosenfeld admits offering several DFI workers employment with Ever-Fresh, but states that he engaged in no solicitation of them while he was DFI's vice-president.

There is no evidence that Knudsen or DFI had an employment contract with any of the employees who terminated in order to work for Ever-Fresh. The evidence is persuasive that Rosenfeld did not solicit any DFI employee until after he terminated employment with plaintiff. There also is no evidence that the resigning employees tried to gain for Ever-Fresh the business of DFI customers while they were still in DFI's employ.

■■ The mere solicitation of an employee, under no contract of employment, to leave and associate with another firm is not illegal. *Bancroft-Whitney Co. v. Glen*, 64 Cal.2d 327, 49 Cal.Rptr. 825, 411 P.2d 921 (1966). The employee is free to inform his business contacts of his new association and to compete with his former employer if his knowledge of the customer's identity was a matter of general knowledge in the trade and not based on specialized or confidential information. *Alex Foods v. Metcalfe, supra*. Though plaintiff alleges that Rosenfeld solicited key employees merely to use the confidential information they possessed, the evidence shows no use of confidential information. It appears that the employees who resigned were possessed of wide experience in the trade and became knowledgeable as a concomitant of that experience. As long as the knowledge acquired is not based on confidential information, there is nothing to "prevent the employee from using the knowledge he has acquired while in one man's employ after he leaves that employ. The law does not require the employee to make a *tabula rasa* of his mind, by erasing from it the knowledge he has acquired." *Sarkes Tarzian, supra* 166 F.Supp. at 278; *Accord, King v. Pacific*

*Vitamin Corp.*, 256 Cal.App.2d 841, 64 Cal.Rptr. 486 (1967).

There is no showing that confidential information has been used or that the solicited employees left DFI with the intention of giving Ever-Fresh confidential information. On the contrary the evidence shows that the defecting employees perceived better opportunities with Ever-Fresh and terminated their employment with DFI for that reason. The importance of the employee's right to seek better employment was observed in a recent case:

"The interests of the employee in his own mobility and betterment are deemed paramount to the competitive business interests of the employers, where neither the employee nor his new employer has committed any illegal act accompanying the employment change." *Diodes v. Franzen*, 260 Cal. App.2d 259, 67 Cal.Rptr. 19, 26 (1968).

Because of the absence of a showing of illegal conduct on the part of defendants or the employees who left DFI, the motion to enjoin the lawful solicitation of at will employees is denied.

## UNFAIR COMPETITION

### a.) *Breach of Covenant of Goodwill*

■■ Although the contract of sale between Dairy Fresh Products Company and plaintiffs did not include a covenant for the sale of goodwill, plaintiffs argue that under the decision of the District Court of Appeal in *Handyspot v. Buegeleisen*[1] the sale of a business implies a covenant for the transfer of goodwill as part of the sales contract. Defendants contend that the sale of the business was not meant to convey goodwill but only the depreciated book value of the assets. In interpreting contracts, California law requires a Court to consider extrinsic evidence if that evidence is relevant to establish an interpretation of the instrument to which it is reasonably susceptible. *Delta Dynamics, Inc. v. Ariota*, 69 Cal.2d 525, 72 Cal.Rptr. 785, 446 P.2d

1. 128 Cal.App.2d 191, 274 P.2d 938 (1954).

785 (1968); *Pacific, Gas & Electric Co. v. G. W. Thomas Drayage & Rigging Co.,* 69 Cal.2d 33, 69 Cal.Rptr. 561, 442 P.2d 641 (1968). In determining the relevance of proferred evidence this Court must consider all credible evidence offered to prove the intention of the parties. *Gribaldo et al. v. Agrippina Versicherunges A. G.,* 3 Cal.3d 434, 91 Cal.Rptr. 6, 476 P.2d 406 (1970). Having considered all the evidence now before me, I conclude for purposes of this motion only that no clear showing has been made that the goodwill of Dairy Fresh Products Company was sold to plaintiff.

### b.) *Use of Deceptively Similar Name and Labels*

■ Plaintiff further complains that when it refused to sell the delicatessen business back to Rabinoff, he then formed a rival company and used it to unfairly compete with plaintiff by utilizing the alleged deceptively similar name of Ever-Fresh, and by imitating plaintiff's packaging label on its deli products.

The evidence shows that the phrase "Ever-Fresh" was used by the Dairy Fresh Products Company as early as January 1948 and has been a registered trademark since May, 1966. Indeed there are many other companies that use the following derivatives of "fresh" in their trade name for food products sold to grocery stores: "Spring Fresh", "Vita Fresh", "Sur Fresh", "Sun Fresh", "Next Fresh", "Gro Fresh", "SO Fresh", "Daisy Fresh", "Tropic Fresh", "Garden Fresh", "Real Fresh", "Myte Fresh" and "Morning Fresh". In the light of this background the use of the phrase "Ever Fresh" is not an unfair business practice.

The Court has seen exhibits consisting of samples of plaintiff's labels and those used by defendant and they are concededly similar in size, shape and coloring.[2] Defendant explains this by pointing out that those who manufacture random weight cheese use either a Hobart or a Toledo scale for automatic weighing, pricing and labeling and in order to facilitate the precise weighing of the cheese a common label type, size and weight is used. Each kind of cheese produced by the manufacturer has color coded labels so that the retailer can tell at a glance what kind of cheese it is. Thus plaintiff, defendant and all competitors who buy a common kind of cheese from the same manufacturer receive similarly labeled cheese. The resulting similarities in the appearance of competitor's labels not only facilitates the marketing of the cheese but also is a cost saving device.

### c.) *Competition With Established Customers*

■ Plaintiff also complains that defendants are not engaged in general business competition but are conspiring to take plaintiffs and has boasted that they will drive plaintiff out of the deli business.

I have reviewed the great number of affidavits in support of and opposing this charge and can only conclude that plaintiff has not borne its burden of showing such a conspiracy or its entitlement to injunctive relief.

■ It is not necessary to sell goodwill to restrain the solicitation of a former employer's customers, *Aetna Building Maintenance Co. v. West,* 39 Cal.2d 198, 246 P.2d 11 (1952). The defendants, former employees, must be engaged in a course of business which *conjunctively* possesses the following five elements:

(1) The information used by the former employee must be confidential and not generally known to the public

(2) The customer of the former employer was solicited with the intent of harming the former employer

2. To avoid further accusations of wrongdoing, defendant has now voluntarily redesigned its labels and abandoned use of the old ones.

(3) The former employee sought customers who are not generally known to the trade

(4) The business is such that a customer will only patronize one concern

(5) The established business relation between the former employer and its customers would ordinarily continue unless interfered with

Thus courts have readily enjoined former employees who have solicited customers based on information they could only have acquired while working for their former employer. *California Intelligence Bureau v. Cunningham*, 83 Cal. App.2d 197, 188 P.2d 303 (1948); *Ingrassia v. Bailey*, 172 Cal.App.2d 117, 341 P.2d 370 (1959); *Whitted v. Williams*, 226 Cal.App.2d 52, 37 Cal.Rptr. 692 (1964). My finding that no confidential information was used by defendants and that all customers solicited were known to the trade, precludes the granting of injunctive relief.

### IRREPARABLE INJURY—ANTITRUST CLAIM

 Plaintiffs allege that they will be irreparably injured if additional key employees are lured away. The nature of the delicatessen business is such that sales are dependent, at times, upon the personal relationship the salesman establishes with the customer. Defendants allegedly have engaged in a course of conduct to restrain competition by appropriating that relationship to their own use and advantage. Plaintiff claims that appropriation has resulted in substantial loss of its sales, and will result in irreparable injury to plaintiffs.

 The right of a former employee to compete with his former employer is recognized, so long as no unlawful method is used. *Alex Foods, supra*. There is nothing illegal about merely selling a product or service in competition with one's former employer if the sale is not made by disparaging the latter's product. *Metal Lubricants*

*Co. v. Engineered Lubricants Co.*, 411 F.2d 426 (8th Cir. 1969). There is no evidence of product disparagement in the case at bar.

*Metal Lubricants* was an action brought by an employer against his competitor, former employee, for appropriating trade secrets, conspiring to leave former employment and entering into unlawful competition violation of the Sherman Act. In evaluating the evidence the Court said:

> "It is true the mass exodus of the employees casts suspicions that . . . (defendants) may have conspired with the others to ruin the competitive position of plaintiff company. (citations omitted). However, noteworthy in appraising the present evidence is the total absence of (1) soliciting of plaintiff's customers to switch allegiance to the new company while the defendants were still in the employ of plaintiff, (2) wrongfully disparaging plaintiff or plaintiff's products and (3) hiring of employees to obtain confidential information or trade secrets" 411 F.2d at 431.

The three factors absent in *Metal Lubricants* are also absent in this case. There is no evidence that customers were enticed to switch their allegiance while defendants or any of the resigning employees were in the employ of plaintiff. There is neither evidence of product disparagement nor use of confidential information or trade secrets.

Plaintiff has failed to show anything other than defendant's lawful pursuit of his financial interest. Plaintiff's reliance on *Perryton Wholesale v. Pioneer Distributing Co.*, 353 F.2d 618 (10 Cir. 1965) is misplaced. In *Perryton* employees of the plaintiff were solicited to leave their employment and work for defendant, a former employee turned competitor. Defendant, however, solicited *employees under contract and before he left the employ of plaintiff*. The defendant also solicited plaintiff's customers before he terminated his employment. None of the practices in *Perryton* are present in the case at bar. Similarly plaintiff's

reliance on *Atlantic Heel v. Allied Heel*[3] is misplaced because that case did not involve an evidentiary hearing but whether the allegations of a complaint stated a claim upon which relief can be granted.

Injunctive relief will not be granted except on a showing of irreparable injury. *Webb v. Bd. of Education,* 223 F.Supp. 466 (N.D.Ill.1963); *Luster Enterprises, Inc. v. Jacobs,* 278 F.Supp. 73 (S.D.N.Y.1967). In order to show irreparable injury there must be no material disputed issues of fact and plaintiff must show with reasonable certainty that he will succeed in the trial of this action. *Washington Pro Basketball Corp. v. National Basketball Ass'n,* 131 F.Supp. 596 (S.D.N.Y.1955); *Yonkers Raceway v. Standardbred Owners Ass'n,* 153 F.Supp. 552 (S.D.N.Y.1957). The case at bar presents material disputed issues of fact which casts reasonable doubt upon the certainty of plaintiff's prevailing at a trial on the merits. Having considered the evidence, weighed the equities and balanced the hardships, the Court hereby denies plaintiff's application for a preliminary injunction.

3. 284 F.2d 879 (1st Cir. 1960).