306 A.2d 164.

Go-Van Consolidators, Inc. *vs.* Piggy Back Shippers, Inc. *et al.*

JUNE 29, 1973.

PRESENT: Roberts, C. J., Paolino, Kelleher and Doris, JJ.

KELLEHER, J. The plaintiff in this civil action seeks damages and injunctive relief. The defendants are a former

employee of the plaintiff and a corporation organized and controlled by the employee. The gist of the plaintiff's complaint is that the individual defendant has contacted and solicited business from its customers. A justice of the Superior Court, after hearing the evidence adduced by the litigants, found for the defendants. Hereafter, we shall refer to the plaintiff as "Go-Van," and the individual defendant as "Cook."

Go-Van was incorporated and began doing business in October, 1970. Two months later, it hired Cook as its sales representative and operations manager. Previous to this time, Cook had worked as a salesman for an interstate motor carrier.[1] The operation which has occupied the litigants' attention is known in the transportation industry as "piggybacking." In the jargon of the motor and rail carriers, "piggy-back" service describes the long haul movement by rail of loaded truck trailers on specially fitted flat cars to a point nearest to where the freight is to be delivered. The feature of the service offered by Go-Van and Cook's corporation was that their customers could ship on one trailer something less than a full trailer load. A customer's shipment could be consolidated or "mated" with others so that one trailer could be loaded with freight of several customers but all consigned to the same area.

Cook worked for Go-Van until April, 1972 when he left and began operating his own corporation. In seeking business for his new endeavor, Cook contacted 26 of Go-Van's customers. Once he had convinced six of them to ship their goods through his corporation, Go-Van commenced this suit.

The sole issue for our determination is whether the trial justice's refusal to classify Go-Van's list of customers as

---

[1] The record makes it clear that neither Go-Van nor defendant's corporation are common carriers. Go-Van is described in the record as a "shipper's agent." Go-Van's president explained that his corporation could not deliver a customer's product to the consignee, whereas a common carrier could provide such a service.

something akin to a trade secret was correct. We believe that it was. .

This court has previously considered three cases where the confidentiality of a customer list was in issue. Shortly after the turn of the century, reliance was placed upon agency principles of master-servant to prohibit a former employee of an optical shop, who had examined the patients, prescribed glasses, and maintained various records, from using the shop's customer list. Such action, the court observed, breached an implied confidential relationship that existed between the master and his servant. *Stevens & Co.* v. *Stiles,* 29 R. I. 399, 71 A. 802 (1909). Later, in *Colonial Laundries, Inc.* v. *Henry,* 48 R. I. 332, 138 A. 47 (1927), a former driver-salesman was enjoined from soliciting customers on his laundry route from a list which had been built up by the labor and expense of the laundry. The list was not to be considered a part of the employee's general knowledge but was to be considered in the same category as a secret formula. The court in *Colonial Laundries, Inc.* distinguished milk, ice, laundry, and tea-route cases from those where a traveling salesman calls on customers whose identity and location could easily be determined by reference to a directory or trade journal. The rationale of the *Colonial Laundries* case is based upon the likelihood that, absent interference, route customers will continue to patronize the same supplier in contrast to customers whose special needs are fair game for the diligence, imagination and resourcefulness of the itinerant salesman.

Recently, we refused to enjoin the solicitation of the operators of gasoline service stations by a salesman who used his ex-employer's customer list. *Callahan* v. *Rhode Island Oil Co.,* 103 R. I. 656, 240 A.2d 411 (1968). We distinguished *Colonial Laundries* on the ground that the operators could be easily identified as potential customers by the simple expedient of looking at the advertising ma-

terial on display in the various stations or by simply perusing the yellow pages of any telephone book.

Cases involving an employer's efforts to insulate his customers from the entreaties of a former employee present the courts with the delicate task of balancing the employee's right to compete and earn a living against the employer's right to be protected from unfair competition. Here, Go-Van made no effort to protect the secrecy of its customer list.[2] There is no evidence that it and Cook had entered into any agreement whereby Cook would not solicit its customers once he had left Go-Van's employ. Having failed to contractually protect itself, Go-Van had the burden of persuading the trial justice that the identity of its customers was not readily ascertainable through ordinary business channels or through business or trade directories.

A business with extensive involvement in the solicitation of interstate shipment of freight is not conducted in a clandestine fashion. Although Go-Van's customers represented a wide array of industries, the fact that they use the facilities offered by interstate carriers is readily ascertainable and a matter of common knowledge within the business community. The information which is the subject of the present controversy would be known by anyone working for a living in the freight solicitation business—a business in which Cook is well-experienced and free to work.

The plaintiff's appeal is denied and dismissed.

Mr. Justice Joslin did not participate.

*Bradley L. Steere,* for plaintiff.

*Manning, Santaniello & Pari, V. James Santaniello,* for defendants.

---

[2]An informative compilation of cases discussing all facets of the employee's obligation to refrain fom contacting former customers in the absence of an express contract can be found in 28 A.L.R.3d 7 (1969).