**WOODWARD INSURANCE, INC., Appellant,**

v.

**C. M. WHITE, Appellee.**

**No. 782S261.**

Supreme Court of Indiana.

July 19, 1982.

Rehearing Denied Sept. 27, 1982.

McCrea & McCrea by Edward F. McCrea, Bloomington, Ind., for appellant.

Mallor & Mills, P. C. by Daniel M. Mills and Barbara Freedman Wand, Bloomington, Ind., for appellee.

## ON PETITION TO TRANSFER

PIVARNIK, Justice.

This cause comes to us on a petition to transfer from the Indiana Court of Appeals. The Monroe Superior Court granted appellee White's motion for summary judgment on Count I, dealing with a covenant not to compete, and after presentation of evidence on Count II, involving trade secrets and confidential information, entered judgment in favor of White, and Woodward Insurance, Inc., appealed. The Court of Appeals, First District, affirmed the decision of the trial court. *Woodward Ins., Inc. v. White*, (1981) Ind.App., 425 N.E.2d 258.

The questions presented for our review are whether the trial court properly entered summary judgment in finding that the covenant not to compete contained in the stock purchase offer to White was void and unenforceable, and also whether the insurance company's customer information constitutes trade secrets and confidential information, thereby making use of such information by a former employee constitute unfair competition. We believe the Court of Appeals erred on the issues presented under Count I at the trial; therefore, we grant petition to transfer, and vacate the opinion of the Court of Appeals.

The facts and circumstances of this cause were well enumerated in the Court of Appeals opinion and we adopt that portion of the opinion and incorporate it herein as follows;

"Woodward is an independent insurance agency located in Bloomington, Indiana. White is a casualty-property insurance agent and is currently employed by the May Agency in Bloomington, Indiana. White began his career as a casualty-property insurance agent approximately in 1930 with G. B. Woodward Company, a partnership. Later in the 1930's, White purchased fifty shares of stock of the Insurance Premium Acceptance Corpora-

tion (Acceptance Corporation), a corporation formed to finance insurance premiums associated with the Woodward agency. Also, he became an officer and director of Acceptance Corporation. In the late 1930's, the G. B. Woodward Company, Inc., was formed upon the dissolution of the G. B. Woodward Company. White was an employee, officer, and director of G. B. Woodward Company, Inc.

In 1959, Acceptance Corporation became Woodward Insurance Company, Inc. (Woodward), and White's stock in Acceptance Corporation was exchanged for stock in Woodward. Woodward also took over the insurance business from G. B. Woodward Company, Inc. In addition to the stock which he received from Woodward in exchange for his Acceptance Corporation stock, White purchased another fifty shares of Woodward stock for seventy-five dollars per share. On December 30, 1959, White signed an "offer to purchase stock of corporation and agreement not to compete in business" with regard to the fifty shares of stock he purchased. This stock purchase offer, which was drafted by Woodward representatives and is the subject of the instant litigation, contained the following covenant not to compete:

'As an express inducement for the corporation to sell me said shares of capital stock and as additional consideration for the purchase of such capital stock, I do now by the execution of this instrument expressly covenant and agree with the corporation as follows:

'1. In the event that my continued or future connection with Woodward Insurance, Inc., its successors or assigns, either as an officer, director or employee, is terminated for any cause or reason whatsoever subsequent to the execution of this instrument, I agree that I will not engage directly or indirectly in the insurance business or any of its lines either as agent, broker, solicitor or employee, or as an officer, director, employee or stockholder of any corporation which may now or hereafter be engaged in the local agen-

cy insurance business in Monroe County, Indiana.

'2. I do further covenant and agree that I will not loan any money or extend any credit to any person, form or corporation engaged in the insurance agency or insurance brokerage business and doing business in Monroe County, Indiana, at any time subsequent to the termination of my employment with Woodward Insurance, Inc. and its successors or assigns.

'3. The above and foregoing covenants and agreements made by me shall remain in full force and effect for a period of five (5) years immediately following the date of the termination of my employment with Woodward Agency, Inc., its successors or assigns. It is expressly understood, however, that following the expiration of such five (5) year period I shall be free to do all or any of the above and foregoing things without restriction.

'4. The terms and provisions hereof shall pertain only to my engagement in the local agency insurance business, either directly or indirectly as hereinabove set forth, within the territorial limits of Monroe County, Indiana, and shall not be applicable to my engagement in such business subsequent to the termination of my employment with Woodward Agency, Inc., its successors or assigns, in any other county in the State of Indiana, or in any other state or territory of the United States.' On September 21, 1979, White tendered his resignation, which was effective October 5, 1979, as an employee, officer, and director of Woodward. He subsequently offered to sell his stock in Woodward back to the corporation, and Woodward purchased it. On October 7, 1979, White negotiated a work agreement with the May Agency and began his employment with that insurance agency on October 8."

425 N.E.2d at 259–60.

■ Under Ind.R.Tr.P. 56(C), a summary judgment motion shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits and testimony, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. If there is any doubt as to the existence of a factual issue, the motion should be resolved in favor of the non-mover. *Klinger v. Caylor*, (1971) 148 Ind.App. 508, 524, 267 N.E.2d 848, 857. In ascertaining the existence of any doubt, the contents of all pleadings, papers and affidavits are liberally construed in favor of the non-movant. *Blankenbaker v. Great Central Insurance Company*, (1972) 151 Ind.App. 693, 699, 281 N.E.2d 496, 500. Summary judgment should not be granted if the facts give rise to conflicting inferences which would alter the outcome. *Clayton v. Penn Central Transportation Company*, (1978) Ind.App., 376 N.E.2d 524, 525. Even though conflicting facts on some elements of a claim exist, summary judgment may be proper when there is no dispute or conflict regarding a fact which is dispositive of the action. *Hayes v. Second National Bank of Richmond*, (1978) Ind.App., 375 N.E.2d 647, 650. Woodward contends that there are material issues of fact as to whether the covenant not to compete was supported by consideration, was ancillary to and necessary for the main purpose of the contract, and whether it expired upon White's relinquishment of his shareholder status. The trial court granted summary judgment on all three of these grounds. The Court of Appeals found the trial court was proper in granting summary judgment on the issue of whether or not the covenant not to compete was ancillary to and necessary for the main purpose of the contract and therefore did not discuss nor decide the issues concerning consideration or whether the contract expired when White sold his stock back to the corporation. Since we feel the Court of Appeals erred in affirming the trial court, we will discuss all three issues.

The two most recent opinions of this court regarding covenants by an employee not to compete are *Buanno v. Weinraub*, (1948) 226 Ind. 557, 81 N.E.2d 600, and

*Donahue v. Permacel Tape Corporation,* (1955) 234 Ind. 398, 127 N.E.2d 235.

In *Buanno, supra,* the Weinraubs were partners engaged in a window cleaning and janitor service business in the city of Fort Wayne, Indiana. Appellant Buanno had been employed under an oral agreement with the Weinraubs for several years. In 1943, Irvin and Leonard Weinraub were about to enter the armed forces for service in WW II and in order to keep the business operating while they were away, submitted to appellant Buanno a written contract which was supplemental to the oral agreement of employment he already was working under. The written contract provided for additional duties for Buanno in the absence of the two men. Those duties involved managerial work which the contract set out, delineating Buanno's responsibilities, plus additional pay he would receive during this period. The contract provided that it could be terminated by either party upon giving sixty (60) days notice to the other party. The contract further provided that Buanno was not to engage in the window cleaning or janitor service in Allen County for a period of three years after he left the employ of the Weinraubs. After Leonard Weinraub returned from the armed forces, a sixty-day written notice of termination of the written contract was sent to the appellant. After the expiration of the sixty (60) days notice, appellant Buanno formed a corporation of his own and went into the janitorial and window cleaning service in Ft. Wayne. The trial court found in favor of Weinraubs and enjoined Buanno from taking part in janitorial or window cleaning business in the Ft. Wayne area for a period of three years, pursuant to the contract.

In affirming the trial court this Court said:

> "The evidence was conflicting as to whether the appellant had been discharged under both the oral agreement of employment and the written contract, but the evidence viewed most favorably to appellees shows that appellant was not discharged as an employee but that he quit the service of the appellees.

It is clear that there was a valid consideration for the negative covenants, for 'a promise to employ will support a promise to work and to refrain from engaging in the competing business.' "

226 Ind. at 563, 81 N.E.2d at 602.

This Court went on to say: "The negative covenant is clear and specific, and it is the duty of the courts to see that it is enforced according to its terms in the absence of any valid defense thereto." *Id.* The *Buanno* court further found:

> "The negative covenant was supported by a binding consideration, and was ancillary, not only to the provisions of the written contract whereby the appellant assumed the duties of management and so became acquainted with the persons buying the service, but it was also ancillary and supplemental to the oral agreement of employment under which the appellant had been working, and under which he continued to work during the life of the written contract. The negative covenant extended to both contracts."

Id. at 564, 81 N.E.2d at 603.

In *Donahue, supra,* employee Donahue entered into a contract with Permacel Tape Corporation which provided that he would not divulge or use for his benefit any confidential information obtained during the course of his employment for his or anyone else's benefit without first obtaining the company's written permission. The second section of the contract provided that the employee would not, for a three year period after leaving the company's employment for any reason, engage in or enter the employment of another manufacturer of adhesive or adhesive tapes in the United States of America or Canada. Appellant Donahue terminated his employment with appellee and soon thereafter went to work for a competitor of Permacel. This Court found the covenant not to compete was unenforceable since it covered an overly broad area. In doing so, we held:

> "However, the rule is firmly established, with reason, that in determining the va-

lidity of a negative covenant in restraint of competition that such contracts are to be strictly construed against the covenantee, and the test of their validity is dependent not merely upon the covenant itself but upon the entire contract and the situation to which it is related. (citations omitted)."

234 Ind. at 404, 127 N.E.2d at 237.

The *Donahue* court further reasoned that a covenant which would restrict an employee beyond the area of his prior operation is void, notwithstanding the fact that the employer's business covers a much greater area. *Id.* at 407, 127 N.E.2d at 239. The court further found that there was "no evidence from which the court could assume that the 'confidential sales information, including ideas, customer lists and the like ... made available' to appellant, were related (except in a general way) to appellee's business outside the limited area of his employment with appellee in northern Indiana. Therefore the case clearly fails to meet the first test of 'necessity for the protection of the covenantee' in the area prescribed,—the United States and Canada.'" Id. at 409, 127 N.E.2d at 240.

The court further stated:

"This brings us to a consideration of the property rights of both the parties to this action. As an incident to his business the appellee (employer) was entitled to contract with regard to and thus to protect the good will of his business. Elements of this good will included 'secret or confidential information,' such as the names and addresses and requirements of customers and the advantage acquired through representative contact with the trade in the area of the application. These are property rights which the employer is entitled to protect. However, the same is not true regarding the skill an employee has acquired, or the general knowledge or information he has obtained which is not directly related to the good will or value of employer's business."

*Id.* at 410, 127 N.E.2d at 240.

The court reasoned that appellant's employment with the appellee was limited to northern Indiana. It found that there was no evidence that Donahue acquired trade secrets or confidential information from Permacel or that the competitive use of such information could result in irreparable injury to the business of Permacel throughout the breadth of the United States and Canada where the covenant attempted to restrict appellant's employment. It was further reasoned that the covenant was "unreasonable to the extent that it attempted to restrict the gainful employment beyond the area of his previous employment with appellee." *Id.* at 412, 127 N.E.2d at 241. Since the contract could not be separated however, as it did not describe the area in which Donahue did work for Permacel, but instead described the restricted area in one indivisible whole, the court found that it would have to find the covenant unenforceable in its entirety. *Id.* at 413, 127 N.E.2d at 241.

The trial court and the Court of Appeals found that Woodward could not enforce the covenant here since, as a matter of law, the covenant not to compete was not ancillary to the main purpose of the contract and was, therefore, void. Their authority for this holding was *Milgram v. Milgram*, (1938) 105 Ind.App. 57, 12 N.E.2d 394. We do not find *Milgram* to be dispositive of this issue in this cause because *Milgram* did not involve a contract that could be construed to be an employment contract at all. The facts in *Milgram* need to be examined in view of the Court of Appeals' analysis of it. Edward H. Milgram and Samuel Milgram were partners in the shoe business and this partnership was dissolved and as a part of the dissolution agreement each partner agreed not to engage in the shoe business in certain designated territories in Gary, Indiana. The contract upon which the action was brought was one entered into a few years after the dissolution of the partnership and one in which these two brothers and a third brother, David, entered into. The contract entered into by these three brothers was concerned with the fact that Edward Milgram owed a certain amount of

money to Samuel Milgram and that they were desirous of securing the registration of the name "MB Bootshop" or "MB Bootshop MB" in the patent office in the name of the three brothers. Id. at 58, 12 N.E.2d at 394. The contract contained the following:

"And the parties hereto agree further as follows: Ed Milgram shall not directly, nor indirectly, operate a retail shoe business south of the present right-of-way of the Wabash Railroad Company and that Sam Milgram shall not directly nor indirectly operate a retail shoe business north of the said Wabash Railroad right-of-way, at any time in the future, and that Dave Milgram shall not operate a retail shoe business in the City of Gary, and that neither Sam Milgram nor Ed Milgram shall operate a retail shoe business in the City of Hammond, Indiana, at any time in the future."

Id. at 59, 12 N.E.2d at 394.

Action was brought by Edward Milgram and another, against Samuel Milgram and others, for an injunction alleging a violation of the contract provision. The contract then was not ancillary to any employment contract or one that could be interpreted to involve employer-employee relations but appeared to have as its main thrust restraint on the business activities of the various parties to the contract. This was the basis of the opinion in the *Milgram* case. The court found that no conventional restraint of trade can be enforced unless the covenant embodying it is merely ancillary to the main purpose of a lawful contract and necessary to protect the covenantee in the enjoyment of the legitimate fruits of the contract or to protect him from the dangers of unjust use of those fruits by the other party. Id. at 62, 12 N.E.2d at 395. The court also stated:

"This very statement of the rule implies that the contract must be one in which there is a main purpose, to which the covenant in restraint of trade is merely ancillary. The covenant is inserted only to protect one of the parties from the injury which, in the execution of the contract or enjoyment of its fruits, he may

suffer from the unrestrained competition of the other. *The main purpose of the contract suggests the measure of protection needed,* and furnishes a sufficiently uniform standard by which the validity of such restraints may be judicially determined. In such a case, if the restraint exceeds the necessity presented by the main purpose of the contract, it is void for two reasons: First, because it oppresses the covenantor, without any corresponding benefit to the covenantee; and, second, because it tends to a monopoly. *But where the sole object of both parties in making the contract as expressed therein is merely to restrain competition, and enhance or maintain prices it would seem that there was nothing to justify or excuse the restraint, that it would necessarily have a tendency to monopoly and therefore would be void.* In such a case there is no measure of what is necessary to the protection of either party, except the vague and varying opinions of judges as to how much, on principles of political economy, men ought to be allowed to restrain competition. There is in such contracts no main lawful purpose, to subserve which partial restraint is permitted, and by which its reasonableness is measured, but the sole object is to restrain trade in order to avoid the competition which it has always been the policy of the common law to foster." [emphasis in original]

Id. at 61, 12 N.E.2d at 395.

█ Viewing the law as it is presented in the cases discussed above, appellant's position is well taken that there were facts in conflict which made the entry of summary judgment by the trial court improper. In ruling on appellee's motion for summary judgment the court had before it the following documents: 1) the Amended Complaint for Injunction and Damages, filed May 22, 1980; 2) Answers by Woodward Insurance, Inc., to Interrogatories consisting of twenty-one pages, filed May 22, 1980; 3) Deposition of C. M. White, taken White, taken February 15, 1980, consisting of twenty-six pages; 5) Deposition of John J.

Mahan, taken May 1, 1980, consisting of thirty-one pages; 6) Deposition of Scott P. Mahan, taken May 1, 1980, consisting of fifty-seven pages; and 7) the Affidavit of C. M. White, filed April 17, 1980.

Although in conflict, there were apparent or potential facts that tended to show that in 1959, Woodward Insurance, Inc., was formed. All of the stock was owned by the officers and directors of the corporation, a controlling majority being held by Woodward himself. All of the officers and directors signed covenants not to compete, either in conjunction with stock purchases such as C. M. White's here, or in other cases subsequent to that in employment contracts. Later in 1965, John Mahan purchased Woodward's controlling stock and became the president of the company. He testified in his deposition that he himself, and other members and officers had signed covenants similar to that of C. M. White. When asked whether the agreement involving the covenant not to compete was entered into because White was an employee or because he was about to purchase some shares of stock, Mahan answered, "Both." There was conflicting evidence as to whether or not C. M. White remembered signing the covenant but there was testimony to the effect that it had been discussed with him in 1976 and other times during his employment. Scott Mahan testified in his deposition that covenants not to compete were common in the insurance agency field. It certainly appears that there are facts in conflict which need to be heard by the trier of fact to determine the entire circumstances of White's employment situation, his acquisition of the stocks and their relationship to his employment, and the significance of the contract with relation to his employment so that a determination can be made whether or not the covenant not to compete is ancillary to the main thrust of the contract. It does not appear that it can be said as a matter of law under the limited facts before the court at this time that the contract was simply one of purchasing stock and had no relationship to White's employment with Woodward.

Since only those employees who were also officers and directors of the corporation owned any of the stock or were permitted to own any of it, it appears that the court was incorrect in finding that as a matter of law there was no consideration for the covenant. White continued to be an employee of Woodward. Whether or not that was a part of the consideration could be decided only by hearing all of the facts of the employment situation and circumstances of entering the contract. *Buanno, supra.*

Finally, neither can it be said as a matter of law that the agreement expired upon Mr. White's selling stock back to the corporation. Nothing in the contract infers that that would be the case. It clearly states that after leaving the agency, the employee was not to take part in the insurance business in Monroe County for a period of five years. If, after hearing all of the facts, the trial court decided that those facts showed no more than that this was a contract for the purchase of stocks, then of course the covenant would not be enforceable anyway because it would not be ancillary to an employment situation. However, if those facts reveal to the satisfaction of the court that there was consideration and that the covenant provision was ancillary to the White's employment situation, then it would not necessarily follow that the covenant provision would expire upon White's selling his stock back to the corporation. This again would depend on a determination of the facts by the court and should not be a subject of summary judgment.

Since there were conflicting facts that needed to be heard and determined by the trial court, entry of summary judgment on Count I was improper. We accordingly vacate the opinion of the Court of Appeals and order the summary judgment set aside and the cause set for trial on the issues presented in Count I.

After the court had entered summary judgment on Count I, the issues under Count II were tried by the court. After hearing all of the evidence on Count II, the trial judge entered judgment in favor of White, finding that customer list expiration

dates, premium amounts, and other information relating to policies do not constitute trade secrets; that Woodward failed to show that White breached any duty owed to Woodward; and that Woodward failed to show that any of White's acts constituted unfair competition with Woodward.

■ Appellant contends that the trial court erred in finding that White did not engage in unfair competition with Woodward. The Court of Appeals properly found that Woodward is appealing from a negative judgment as to the issues raised in Count II. Therefore, neither the Court of Appeals nor this Court will reverse the trial court judgment unless it is contrary to law. In determining whether the trial court's judgment is contrary to law, we will consider the evidence in the light most favorable to the appellee and reverse the judgment only if the evidence leads to but one conclusion and the trial court reached an opposite conclusion. *Captain & Co. v. Towne*, (1980) Ind.App., 404 N.E.2d 1159; *Plumley v. Stanelle*, (1974) 160 Ind.App. 271, 311 N.E.2d 626.

■ Count II is based on a theory of unfair competition which constitutes acts by an employee against an employer following that employment and the use by that employee of trade secrets or other confidential information acquired in the course of his employment for his benefit or that of a competitor in a manner which is detrimental to his former employer. *Westervelt v. National Paper and Supply Company*, (1900) 154 Ind. 673, 57 N.E. 552; *In Re Uniservices, Inc.*, (7th Cir. 1975), 517 F.2d 492; *Community Counselling Service Inc. v. Reilly*, (4th Cir. 1963), 317 F.2d 239; *Republic Systems and Programming, Inc. v. Computer Assistance, Inc.*, (D.Conn.1970), 322 F.Supp. 619, aff'd (2d Cir. 1971), 440 F.2d 996. When an employee is not bound by a covenant not to compete it is generally recognized that the employee has the right to compete with his former employer. *Community Counselling Service, Inc., supra.* The goodwill of the business which includes confidential customer information is a protectable interest by contract or against a conspiracy to appropriate it by unlawful acts. *Miller v. Ortman*, (1956) 235 Ind. 641, 670, 136 N.E.2d 17, 34. We agree with the Court of Appeals where it wrote:

"Whether customer information constitutes a trade secret or confidential information depends upon the facts of each individual case. Several different factors have been used by courts to determine whether customer lists or customer information constitutes a trade secret. (See Annot., 28 A.L.R.3rd 7 (1969) for a comprehensive discussion of this issue.) These factors include: (1) the extent to which the information is known outside of the business and the ease or difficulty with which the acquired information could be properly acquired by others, *see Van Products Co. v. General Welding & Fabricating Co.*, (1965) 419 Pa. 248, 213 A.2d 769; (2) whether the information was confidential or secret, *see In re Uniservices, Inc., supra; Town & Country House & Homes Service, Inc. v. Evans*, (1963) 150 Conn. 314, 189 A.2d 390; *Mathews Paint Co. v. Seaside Paint & Lacquer Co.*, (1957) 148 Cal.App.2d 168, 306 P.2d 113; (3) the extent and manner in which the employer guarded the secrecy of the information, *see Go-Van Consolidators, Inc. v. Piggy Bank Shippers, Inc.*, (1973) 111 R.I. 697, 306 A.2d 164; and (4) the former employee's knowledge of customer's buying habits and other customer data and whether this information is known by the employer's competitors; *see, Mathews Paint Co. v. Seaside Paint & Lacquer Co., supra.* Upon application of these factors, some courts have found customer lists did not constitute trade secrets, *see Knudsen Corp. v. Ever-Fresh Foods, Inc.*, (C.D.Calif.1971) 336 F.Supp. 241; *Republic Systems & Programming, Inc. v. Computer Assistance, Inc.* [322 F.Supp. 619], *supra; Holiday Food Co. v. Munroe*, (1981) 37 Conn.Supp. 546, 426 A.2d 814; *Jewett-Gorrie Insurance Agency v. Visser*, (1975) 12 Wash.App. 707, 531 P.2d 817; *American Welding & Engineering Co. v. Luebke*, (1968) 37 Wis.2d 697, 155 N.W.2d 576; *DiAngeles v. Scauzillo*,

(1934) 287 Mass. 291, 191 N.E. 426, while other courts have found them to constitute trade secrets, *see Alexander & Alexander, Inc. v. Drayton* (E.D.Penn.1974) 378 F.Supp. 824, aff'd, (3rd Cir. 1974) 505 F.2d 729; *State Farm Mutual Automobile Insurance Co. v. Dempster*, (1959) 174 Cal.App.2d 418, 344 P.2d 821; *Morgan's Home Equipment Corp. v. Martucci*, (1957) 390 Pa. 618, 136 A.2d 838."

425 N.E.2d at 263–64.

In the present case, the information which was alleged to be confidential included the names of customers, the expiration dates of their policies and policy coverages and cost. In the findings of fact, the trial court found that policies of insurance issued by White for the May Agency after leaving Woodward, from October 8, 1979, to and including June 27, 1980, showed the following: "Of the 106 customers served by C. M. White while employed by the May Agency, 82 were former Woodward customers, which is 77%. Of the 193 policies of insurance issued by C. M. White while employed by the May Agency, 163 were issued to former Woodward clients, which is 84%. Of the total premiums paid by customers served by C. M. White while employed by the May Agency ($120,498.48) $110,620.38 in premiums was paid by former Woodward clients, which is 92%. Of the commissions yielded by these premiums to the May Agency, Inc., $15,846.75 were commissions paid by former Woodward clients, which is 90.5%."

The court further found that during his employment with Woodward, White had access to, and awareness of, information of names and addresses of customers, name of the insurance company providing the coverage, type of coverage, premiums paid, commissions earned, and all other information necessary to serve clients. The court also found that it was established during the trial that knowledge and use of expiration dates was a central factor in obtaining and retaining the business of a particular insurance customer. However, the court found, on the evidence, that information White obtained was also available to other persons including agents of other insurance companies by a variety of means, including obtaining such information directly from customers and checking public records of the Monroe County Court House. Insurance agencies themselves exchange information at times, particularly when one insurance company is providing umbrella liability coverage and the other has primary liability coverage. The trial court further found that there was no established policy in the Woodward Agency with regard to treatment of certain information as confidential information and that each employee was left to make his own decision regarding the confidentiality of business information. The Court of Appeals held that since the evidence was conflicting on these points an appeals court is not permitted to reweigh the testimony and substitute its judgment for that of the trial court simply because the appeals court might have reached an opposite result had it been the trier of fact.

▮▮▮ The Court of Appeals was correct in this issue and we, of course, are bound by the same principle. Since Woodward is appealing from a negative judgment on Issue II, we can reverse that judgment only if we find it was contrary to law in that the evidence leads to but one conclusion and the trial court reached an opposite conclusion. Based on the evidence presented to the trial court here, it does not appear that we would be justified in disturbing its judgment. The facts and circumstances regarding White's activities in the May Agency after leaving Woodward, are considered in a different light under the issues drawn in Count I where a covenant not to compete is involved and in Count II where there is no such covenant. The very purpose of a covenant not to compete is that the employee will have the knowledge of the customers and their coverages along with the good will of the company which he helped represent in the community and will carry that with him to a competitor. The facts found by the trial court would be very pertinent to that issue under Count I where they would not necessarily be so under Count II, which contemplates the use of trade secrets

or confidential information that is not available to anyone except a trusted employee. We cannot say that the facts presented to the trial court under Count II were such that the evidence leads to but one conclusion and the trial court reached an opposite conclusion. There was evidence before the trial court from which it could properly enter judgment as it did and we will not re-try those issues and reverse the trial court under Count II.

We grant transfer and vacate the opinion of the Court of Appeals. The trial court is affirmed on Count II; the trial court is reversed on Count I. This cause is remanded to the trial court with instructions to set aside the summary judgment entered under Count I and set the cause for trial on the issues raised therein. Judgment accordingly.

GIVAN, C. J., and DeBRULER, and PRENTICE, JJ., concur.

HUNTER, J., dissents with separate opinion.

HUNTER, Justice, dissenting.

I must respectfully dissent from the majority opinion. The opinion and decision of the Court of Appeals found at *Woodward Insurance, Inc. v. White*, (1981) Ind.App., 425 N.E.2d 258, should not be disturbed; likewise, as the Court of Appeals held, the summary judgment entered by the trial court should be affirmed.

The trial court granted White's motion for summary judgment for three reasons:

1. The covenant not to compete lacked the consideration necessary to render it enforceable;

2. The covenant was not ancillary to and necessary for the main purposes of the agreement; and

3. The terms of the agreement expired when White relinquished his shareholder status.

For any and all of these reasons the trial court's judgment should be upheld. That is so because Woodward Insurance Company failed in its duty as non-movant to set forth "specific facts" to establish the existence of a "genuine issue," as required by Ind.R. Tr.P. 56(E). *Shideler v. Dwyer*, (1981) Ind., 417 N.E.2d 281; *Whipple v. Dickey*, (1980) Ind.App., 401 N.E.2d 787.

For twenty-nine years prior to the existence of the stock purchase agreement and covenant not to compete which is at issue here, defendant C. M. White had been employed by the predecessor corporations of the plaintiff, Woodward Insurance, Inc. During that time, he never signed a written contract of employment.

Accordingly, for those twenty-nine years—1930 to 1959—White's employment status with the predecessor corporations was that of an employee at will. As an employee at will, White was subject to dismissal at any time for any reason—without legal recourse—as per this jurisdiction's common law adherence to the employment at will doctrine. *Campbell v. Eli Lilly & Co.*, (1980) Ind.App., 413 N.E.2d 1054 (Ratliff, J., dissenting); *Martin v. Platt*, (1979) Ind. App., 386 N.E.2d 1026; *Shaw v. S. S. Kresge Company*, (1975) 167 Ind.App. 1, 328 N.E.2d 775; *Montgomery Ward & Co. v. Guignet*, (1942) 112 Ind.App. 661, 45 N.E.2d 337.

During the late 1930s, White had purchased fifty shares of stock in the Insurance Premium Acceptance Corporation, which was formed to finance insurance premiums associated with the Woodward Agency. As the owner of fifty shares, White was a minority shareholder.

In 1959, as the majority has explained, a reorganization of the corporation occurred. In December of that year, the parties executed the stock purchase agreement and covenant not to compete. The document was drafted by the corporation's attorney.

Pursuant to the agreement, White purchased fifty shares of stock and paid the fair market value—$75 per share. He remained a minority shareholder, notwithstanding his acquisition.

At the same time, White became subject to the covenant not to compete, which, according to the language of the document,

precluded him from competing with Woodward Insurance for a period of five years subsequent to the termination of his employment *"for any cause or reason whatsoever."* (Emphasis added.) Significantly, no written contract of employment was executed; White remained an employee at will, with no legal recourse in the event Woodward Insurance fired him.

This evidence is uncontradicted. It belies the majority's conclusion that there was adequate consideration flowing from Woodward Insurance to White to render the covenant enforceable.

The majority bases its conclusion on the fact that "White continued to be an employee of Woodward." *Majority Opinion, supra.* While White did in fact remain an employee, the extent of his continued employment remained unstated and wholly indefinite—a classic example of employment at will, as defined in this jurisdiction. *Campbell v. Eli Lilly & Co., supra; Martin v. Platt, supra; Shaw v. S. S. Kresge Company, supra.*

Inasmuch as White could have been fired at any time for any reason by Woodward, who would have been immune from liability, any consideration received by White in the form of continued employment, at the time the contract was executed, amounted, at best, to a purely illusory promise. Woodward Insurance was not legally bound to retain White, nor does the record reveal any facts to establish a promise—oral, written, express or implied—to do so.

Even if some ambiguity existed in the stock purchase agreement to support an inference that White would receive continued employment for some defined period, rather than simply at the will of Woodward, the majority's conclusion would still not be warranted. Woodward Insurance's attorney drafted the contractual agreement; as this Court emphasized in both *Buanno v. Weinraub,* (1948) 226 Ind. 557, 81 N.E.2d 600, and *Donahue v. Permacel Tape Corporation,* (1955) 234 Ind. 398, 127 N.E.2d 235, the terms of an agreement which would invoke a covenant not to compete must be strictly construed against its author.

Here, of course, there is no ambiguity in the clause that provided White could not compete for five years subsequent to his termination "for any cause or reason whatsoever." White paid full fair market value for his stock; for the covenant, he received nothing, for he could have been fired immediately without any recourse.

This cannot be characterized as adequate consideration under the existing case precedent of this jurisdiction. *Campbell v. Eli Lilly Co., supra* (even if employee at will was promised he would not be discharged, that covenant was unenforceable for lack of consideration in that the employee had not promised he would continue employment); *Advanced Copy Products, Inc. v. Cool,* (1977) 173 Ind.App. 363, 363 N.E.2d 1070 (continued employment held not sufficient to constitute adequate consideration to support a covenant not to compete); *Warrick Beverage Corp. v. Miller Brewing Co.,* (1976) 170 Ind.App. 114, 352 N.E.2d 496 (since either party could terminate duties of performance at will, contract was unenforceable); *Shanks v. Fisher,* (1955) 126 Ind. App. 402, 130 N.E.2d 231 (unilateral promise of owners to pay builder extra amount for work already subject to contract was unenforceable due to lack of consideration); *Semon, Bache & Co. v. Coppes, Zook & Mutschler Co.,* (1905) 35 Ind.App. 351, 74 N.E. 41 (contract which failed to impose any obligation on one of the parties was unenforceable for lack of mutuality in consideration).

Other jurisdictions which have confronted the question before us have concluded that covenants not to compete executed after the inception of employment are not enforceable unless supported by additional consideration—a requirement not satisfied simply by the promise or fact of continued employment. *See, e.g., Super Maid Cook-Ware Corporation v. Hamil,* (5th Cir. 1931) 50 F.2d 830; *James C. Greene Co. v. Kelley,* (1964) 261 N.C. 166, 134 S.E.2d 166; *Morgan Lumber Sales Co. v. Toth,* (1974) 41 Ohio Misc. 17, 321 N.E.2d 907; *McCombs v. McClelland,* (1960) 223 Or. 475, 354 P.2d

311; *Maintenance Specialities, Inc. v. Gottus,* (1974) 455 Pa. 327, 314 A.2d 279; *Schneller v. Hayes,* (1934) 176 Wash. 115, 28 P.2d 273. On the other hand, where the execution of a covenant not to compete has been accompanied by an express contract for a continuation of employment, usually for a fixed period of time, adequate consideration has been found to support the covenant. *See, e.g., Daughtry v. Capital Gas Co.,* (1969) 285 Ala. 89, 229 So.2d 480; *Louisville Cycle & Supply Co. v. Baach,* (Ky.1976) 535 S.W.2d 230; *Wrentham Co. v. Cann,* (1963) 345 Mass. 737, 189 N.E.2d 559; *see generally* 51 *A.L.R.3d* 825 (1973).

The majority's conclusion that adequate consideration did run to White is expressly based on the well settled rules that when confronted with a motion for summary judgment, the contents of all pleadings are to be liberally construed in favor of the party opposing the motion, and that summary judgment should be denied if the facts give rise to conflicting inferences which are outcome-determinative. *See Majority Opinion, supra.* The majority has failed to acknowledge or apply, however, an equally well established rule pertaining to the disposition of summary judgments. Ind.R.Tr.P. 56(E) reads in pertinent part:

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

Here, when confronted with White's motion for summary judgment, supporting affidavits, and evidence obtained via discovery, Woodward failed to produce "specific facts" to establish that White received any consideration for the covenant.

Consequently, as per the mandate of Ind. R.Tr.P. 56(E), the trial court's entry of summary judgment was proper. *Shideler v. Dwyer, supra; Whipple v. Dickey, supra.*

Instead, the majority of this Court has reversed the summary judgment on an inference based on conjecture.

This same improper approach to Ind.R. Tr.P. 56(E) forms the basis for the majority's conclusion that a factual dispute existed with respect to whether the covenant not to compete was ancillary to and necessary for the main purpose of the stock purchase agreement. The majority delineates the various documents to be considered in ruling upon the summary judgment motion, speaks of "*apparent* or *potential* facts," and, without addressing the main purpose of the agreement or explaining the manner in which the covenant not to compete was "ancillary to and necessary for" that main purpose, summarily concludes that "it certainly *appears*" a factual dispute existed. *Majority Opinion, supra* (emphasis added).

At the same time, confusion is exhibited over the question before the court. The majority states: "When asked whether the agreement involving the covenant not to compete was entered into because White was an employee or because he was about to purchase some shares of stock, Mahan [company president] answered, 'Both.'" Of course the agreement involving the covenant not to compete related to White's employment. Inherently, covenants not to compete are matters which employers execute with those in their employment. Likewise, as Woodward acknowledges in its brief, the stock purchase agreement was available to employees only; according to Woodward, the purpose of the stock purchase agreement was to insure that employees working for the corporation "owned stock and had a vested interest in the profits."

The question before this Court, however, is not whether the covenant not to compete related to White's "employment *situation,*" *Majority Opinion, supra* (emphasis added); rather, the issue is whether the covenant not to compete was ancillary to and necessary for the main purpose of the contractual agreement to which it was attached—the stock purchase agreement. *Buanno v. Weintraub, supra; 4408, Inc. v. Losure,* (1978) Ind.App., 373 N.E.2d 899.

It is self-evident that the majority has misconstrued the issue before it, for it has not even examined the language of the stock purchase agreement to which the covenant not to compete was attached. That contractual language, drafted by Woodward as an offer to purchase, reads:

"I, the undersigned, do hereby offer to purchase 50 shares of the capital stock of Woodward Insurance, Inc., at the price of $75.00 per share.

"This offer to purchase stock shall remain in full force and effect and may be accepted by the Board of Directors of Woodward Insurance, Inc. at any time prior to and including the 15 day of January, 1960. In the event this offer to purchase is accepted by the Board of Directors of the corporation, the undersigned will be prepared to pay for said stock in cash on or before the 15th day of January, 1960."

The language is unambiguous. It concerned only the purchase of stock and neither expressly nor impliedly was directed to White's "employment situation." It cannot be said that the covenant not to compete was in any shape or form somehow necessary for or ancillary to the purpose of transferring stock.

When confronted with similar circumstances in *Milgram v. Milgram*, (1938) 105 Ind.App. 57, 12 N.E.2d 394, our Appellate Court found that the covenant not to compete was unenforceable. There, three brothers entered into an agreement which acknowledged existing debts, stipulated their mutual interest in obtaining a common patent registration, and designated exclusive areas of business for each, complete with reciprocal covenants not to compete. The Appellate Court rejected the contention that the covenants not to compete were enforceable:

"The covenant attempted to be enforced here was not ancillary to the main purpose of a lawful contract, nor was it necessary to protect the covenantee in the enjoyment of the legitimate fruits of the contract nor to protect him from the dangers of an unjust use of those by the other party." *Id.*, 105 Ind.App. at 60, 12 N.E.2d at 395.

Likewise, the covenant not to compete at issue here was in no way necessary to protect Woodward Insurance in the fruits of its sale of stock. The Court of Appeals was correct in its unanimous conclusion that *Milgram* applied to the facts at bar. *Woodward Insurance, Inc. v. White, supra. Accord, Wilmar, Inc. v. Liles*, (1971) 13 N.C. App. 71, 185 S.E.2d 278, 51 A.L.R.3d 816.

The majority of this Court attempts to distinguish *Milgram* on the basis that *Milgram* "did not involve a contract that could be construed to be an employment contract at all." *Majority Opinion, supra.* Neither did this case, however; there was no employment contract between the parties. White was an employee at will and could be fired at any time.

The significance of this fact must be recognized, as it has been in the case precedent of this Court. In *Jenkins v. King*, (1946) 224 Ind. 164, 65 N.E.2d 121, this Court found that a covenant not to compete executed as part of a two-year written employment contract lapsed at the end of the two-year term. Although the employee had continued to work past the two-year contractual period, this Court found the covenant unenforceable. The majority's decision here cannot be reconciled with the *Jenkins* holding.

Inasmuch as the covenant not to compete was executed solely in consideration for the opportunity to purchase stock, as per the express terms of the contract drafted by Woodward, consistency with this Court's decision in *Jenkins v. King, supra*, would deem that the enforceability of the covenant also expired with White's resale of the stock to Woodward Insurance. The trial court was correct in holding that this rationale also rendered summary judgment appropriate.

The decision in *Jenkins*, as well as the numerous principles and precedent discussed herein, have rested on this jurisdiction's repeated recognition that covenants not to compete are in restraint of trade and, as a consequence, are not favored in the

law. *Jenkins v. King, supra; Captain & Co. v. Towne,* (1980) Ind.App., 404 N.E.2d 1159. The majority's decision here today runs against the grain of this well-settled maxim; at the same time, it flies in the face of both Ind.R.Tr.P. 56(E) and the contractual principle that language contained in an agreement is to be strictly construed against the author.

The Court of Appeals correctly decided the issues presented by the parties. Woodward Insurance, Inc.'s petition to transfer should be denied.

For all the foregoing reasons, I dissent.