WILMAR, INCORPORATED v. LEO VANDER LILES AND WILMAR, INCORPORATED v. O. T. POLK, JR.

No. 7126SC620

(Filed 15 December 1971)

1. Contracts § 7; Master and Servant § 11— covenant not to compete — consideration

When the employment preexists the execution of an employment contract containing a covenant not to compete, there must be some additional consideration to the employee to support his covenant not to compete.

2. Contracts § 7; Master and Servant § 11— covenant not to compete — illusory consideration — main purpose of contract

Where employment contracts containing a covenant not to compete were executed by defendant salesmen after they had been employed by plaintiff as salesmen for some time, and the stated con-

sideration for the contracts was the initiation of a profit sharing plan for defendants and other employees, but the profit sharing plan was subject to amendment by plaintiff and was amended to reduce, and for a period of two years eliminate, contributions by plaintiff to the plan, employees forfeited their interest in the plan if they competed with plaintiff within three years after termination of their employment, and the greatest benefit under the plan accrued to plaintiff's president and sole stockholder, it was *held* that the covenants not to compete were void, the consideration to defendants being illusory, and the covenants being the main purpose of the contract and not ancillary to the contract of employment.

APPEAL by defendants from *Snepp, Judge,* 3 May 1971 Session of MECKLENBURG Superior Court.

Plaintiff instituted these two actions against defendants, former employees of plaintiff, to enforce covenants not to compete contained in employment contracts entered into between plaintiff and defendants. By agreement the cases were consolidated for hearing in the superior court and for determination in this court.

The facts pertinent to the issue raised on appeal are substantially free from dispute.

Defendants were both employed by plaintiff as salesmen of its products, janitorial and automotive chemicals and supplies. They were paid on a commission basis and were assigned to sell in certain non-exclusive territories in North Carolina and Virginia. Defendant Liles became an employee of plaintiff in 1957, and defendant Polk in April 1963. Neither of defendants was asked to enter into any written agreement with plaintiff at the time they became employees. Both defendants continued to work for plaintiff without written contracts until November of 1963. On 6 November 1963 in the case of Liles, and on 7 November 1963 in the case of Polk, written employment contracts were executed with plaintiff. The contracts were similar except for the territories to be covered by defendants. Each of the contracts contained a covenant by defendants not to compete, either directly or indirectly, with plaintiff during the term of their employment or for a period of one year thereafter. The covenant was limited to the territory in which defendants worked while employed by plaintiff. The stated consideration by plaintiff for the new contracts was the initiation of a profit sharing plan for defendants and other employees to begin as of 1 December 1963. Plaintiff also agreed to reimburse the defendants for one-half of their gasoline bill for any quarter in which

their gross sales exceeded $9,000.00; this provision could be terminated by plaintiff at its option. There was no other change in the employment conditions or compensation of defendants.

Plaintiff instituted the profit sharing plan as agreed upon in the contracts. The plan was subject to amendment by plaintiff, but plaintiff could not disturb any contributions already made to the fund. The right to amend was exercised by plaintiff on several occasions. By two of these amendments, plaintiff reduced the minimum amount which it would contribute to the plan. Under these reductions, no contributions were made between 30 November 1967 and 30 April 1969.

Defendants continued to work for plaintiff until 1971. On 12 February 1971 defendant Polk voluntarily terminated his employment with plaintiff and on 15 February 1971 defendant Liles voluntarily terminated his employment with plaintiff.

Upon termination of their employment with plaintiff, defendants accepted positions with Palmetto Chemical Company of Cheraw, South Carolina. Palmetto was a direct competitor of plaintiff. Defendants were employed as salesmen by Palmetto and serviced substantially the same territories and customers they had previously serviced for the plaintiff. As a result of their competition, plaintiff suffered a substantial decline in its sales in those areas serviced by defendants. Further pertinent facts are set forth in the opinion.

On 10 March 1971, plaintiff brought these actions seeking to enforce the covenant not to compete contained in defendants' contracts. Pursuant to appropriate notice, plaintiff moved for temporary injunctions against defendants. Following a hearing the superior court made appropriate findings of fact and entered an interlocutory order restraining defendants from further competition with plaintiff.

From this order defendants appealed.

*Grier, Parker, Poe, Thompson, Bernstein, Gage and Preston by Mark R. Bernstein, Sydnor Thompson and W. Samuel Woodard for plaintiff appellee.*

*McElwee & Hall by John E. Hall, and W. G. Mitchell for defendant appellants.*

BRITT, Judge.

Did the trial court err in entering the temporary injunction appealed from? We hold that it did.

By seeking to have defendants enjoined from certain acts, plaintiff asks the court to exercise its equitable jurisdiction. While under our present system the same court grants legal as well as equitable relief, this does not allow a party the option to demand either at his will; equitable relief will be granted only when legal relief is inadequate, and the party must bring himself within the rule by alleging and establishing facts which will warrant the equitable remedy. McIntosh, N. C. Practice and Procedure, 2d Ed., Sec. 2191.

Although the Supreme Court of North Carolina and this court have considered numerous cases involving anticompetitive covenants, our search fails to reveal any case in which either court addressed itself to a determination of whether the contract before it was, in fact, a naked contract not to compete or an ancillary contract in restraint of trade and whether a restrictive covenant not ancillary to a principal contract of employment, sale, or lease is enforceable.

In 54 Am. Jur. 2d, Monopolies, Sec. 514, p. 961, it is said:

"As a general rule, an anticompetitive covenant is unenforceable unless it is ancillary or incidental to a lawful contract, even though it is supported by a consideration. A restrictive provision which might be upheld if it were incidental to some principal contract cannot be enforced if it appears to be the main purpose of the contract, and not subordinate thereto."

In *Purchasing Associates, Inc. v. Weitz,* 13 N.Y. 2d 267, 196 N.E. 2d 245 (1963) the New York Court of Appeals said:

"At one time, a covenant not to compete, basically an agreement in restraint of trade, was regarded with high disfavor by the courts and denounced as being 'against the benefit of the commonwealth'. (Citations) It later became evident, however, that there were situations in which it was not only desirable but essential that such covenants not to compete be enforced.

"Where, for instance, there is a sale of a business, involving as it does the transfer of its goodwill as a going

concern, the courts will enforce an incidental covenant by the seller not to compete with the buyer after the sale. (Citations) * * * The sole limitation on the enforcibility (sic) of such a restrictive covenant is that the restraint imposed be 'reasonable,' that is, not more extensive, in terms of time and space, than is reasonably necessary to the buyer for the protection of his legitimate interest in the enjoyment of the asset bought. (Citations)

"Also enforcible (sic) is a covenant given by an employee that he will not compete with his employer when he quits his employ, and the general limitation of 'reasonableness', to which we have just referred, applies equally to such a covenant. (Citations) However, since in the case of such a covenant the element of good will, or its transfer, is not involved and since there are powerful considerations of public policy which militate against sanctioning the loss of a man's livelihood, the courts have generally displayed a much stricter attitude with respect to covenants of this type. (Citations)"

In *Little Rock T. & L. Sup. Co. v. Independent L. Serv. Co.*, 237 Ark. 877, 377 S.W. 2d 34 (1964) we find:

"A naked contract not to compete with another is against public policy. *Shapard v. Lesser*, 127 Ark. 590, 193 S.W. 262, 3 A.L.R. 247. Such an agreement is permissible, however, either in connection with the sale of a going business or, as here, in connection with a contract of employment. Yet even in those instances the restraint is unreasonable and void if it is greater than is required for the protection of the promisee or if it imposes an undue hardship upon the person who is restricted. Rest., Contracts, § 515, which we quoted with approval in *Marshall v. Irby*, 203 Ark. 795, 158 S.W. 2d 693. Owing to the possibility that a person may be deprived of his livelihood the courts are less disposed to uphold restraints in contracts of employment than to uphold them in contracts of sale. Williston, Contracts (Rev. Ed.), § 1643; Banks, Covenants Not to Compete, 7 Ark. L. Rev. 35."

In *Super Maid Cook-Ware Corporation v. Hamil*, 50 F. (2d) 830 (1931), the 5th Circuit Court of Appeals said:

"Appellant by its prayer for injunctive relief prima facie puts itself in the position of seeking, by contract, to deprive appellees of the right to earn their livelihood. Equity places upon it the burden of showing that the contract was fair, the restrictive covenants reasonable, and that they have a real relation to, and are really necessary for, the protection of appellant in the business to which the covenants are an incident. For, fundamentally, in and of themselves these covenants are in restraint of trade, and unenforceable. It is a settled principle of law that no man may, per se, contract with another that that other will not follow a calling by which he may make his livelihood. It is only when they are incidental to some contract which is reasonable in its purpose and its terms, and it is necessary to the protection of the rights of the employer under such contract, that the validity of restrictive covenants will be recognized and enforced, and then only when they are themselves reasonable, no public interests are involved, and the restriction is limited to the very point of the necessity of protecting contract rights, to which the covenant is incidental. In short, it is never the covenant itself, but the covenant in relation to the facts of the situation or contract to which it is incidental, which may be valid.

"Further, it is well settled that, while a court of equity will in proper cases issue its writ of injunction to enforce covenants of this kind, it will not do so unless the whole matter appears equitable; that is, unless it rests upon a contract which is fair in its terms, involves no imposition nor injustice, and the private interests of the employer in the subject-matter of the contract to which the restrictive covenant is incidental, requires in good faith for its protection the enforcement of the covenant. *Hepworth Mfg. Co. v. Ryott* (1920) 1 Ch. 1, 9 A.L.R. 1484; *Samuel Stores v. Abrams,* 9 A.L.R. 1450, note; *Taylor Iron & Steel Co. v. Nichols,* 73 N.J. Eq. 684, 69 A. 186, 24 L.R.A. (N.S.) 933, 133 Am. St. Rep. 753; *Kinney v. Scarbrough Co.,* 138 Ga. 77, 74 S.E. 772, 40 L.R.A. (N.S.) 473; *Herbert Morris, Ltd. v. Saxelby,* 1 App. Cas. 688; *Clark Paper & Mfg. Co. v. Stenacher,* 236 N.Y. 312, 140 N.E. 708, 29 A.L.R. 1325; *Club Aluminum Co. v. Young,* 263 Mass. 223, 160 N.E. 804; *Mentor Co. v. Brock,* 147 Minn. 407, 180 N.W. 553, 20 A.L.R. 857; *Southern Properties v. Carpenter* (Tex. Civ. App.) 21 S.W. (2d) 372, 373."

The case of *Exterminating Co. v. Jones, et al.,* 258 N.C. 179, 128 S.E. 2d 139 (1962), involved covenants not to compete set forth in original contracts of employment. Our Supreme Court held that courts of equity will enforce such a covenant not to compete if it is: (1) in writing, (2) entered into at the time and as part of the employment contract, (3) based on valuable consideration, (4) reasonable as to time and territory, (5) fair to the parties and (6) not against public policy.

Contracts in restraint of trade or commerce are condemned by statutes in North Carolina. G.S. 75-1 provides in pertinent part as follows: "Every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce in the State of North Carolina is hereby declared to be illegal. . . . " G.S. 75-2 provides: "Any act, contract, combination in the form of trust, or conspiracy in restraint of trade or commerce which violates the principles of the common law is hereby declared to be in violation of § 75-1." G.S. 75-4 provides: "No contract or agreement hereafter made, limiting the rights of any person to do business anywhere in the State of North Carolina shall be enforceable unless such agreement is in writing duly signed by the party who agrees not to enter into any such business within such territory: Provided, nothing herein shall be construed to legalize any contract or agreement not to enter into business in the State of North Carolina, or at any point in the State of North Carolina, which contract is now illegal or which contract is made illegal by any other section of this chapter." These statutes were enacted by the 1913 General Assembly.

[1] In the case before us the covenants not to compete were included in contracts of employment entered into by the defendants after defendant Liles had been in plaintiff's employment for six years and defendant Polk for six months. When the employment preexists the execution of the contracts, there must be some additional consideration to the employee to support his covenant not to compete. *Greene Co. v. Kelley,* 261 N.C. 166, 134 S.E. 2d 166 (1964).

[2] The principles stated above must be applied as we turn to an examination of the facts in this case. As mentioned before, the contracts before us were not entered into at the time defendants were employed by plaintiff. Each contract provided for the initiation of a profit sharing plan allegedy for the bene-

fit of defendants (and other employees) and for the reimbursement of one-half defendants' gasoline bills for any quarter in which their gross sales exceeded $9,000. In return defendants executed the covenants not to compete with plaintiff. The terms and conditions of defendants' existing employment were not altered in any other manner. Plaintiff's promise to reimburse defendants for their gasoline bills could be terminated at plaintiff's option and it is not contended that such a promise would be valid consideration to support defendants' covenants. The profit sharing plan instituted pursuant to defendants' contracts provided that plaintiff could, at any time, amend the plan so long as such amendment did not divert the corpus of the trust to a purpose other than for the benefit of members of the plan. Under this provision plaintiff did in fact alter the plan to reduce its contributions to the trust fund. These reductions had the effect of eliminating, for a period of two years, any contributions by plaintiff. Under the plan if an employee under written contract with plaintiff terminated his employment, he would not be entitled to his vested interest until three years from the date of termination. It was further provided that if the former employee competed with plaintiff during this period, he would forfeit his vested interest and it would revert to the accounts of all other participants in the plan in proportion to their share of allocable contributions for that year. It is noted that the forfeiture provision extends two years beyond the period covered by defendants' covenants not to compete. Contribution to an employee's account was based on the ratio of the employee's compensation to the total compensation of all participants in the plan. Other relevant circumstances include the fact that Mr. Jules Buxbaum is the president and sole shareholder of plaintiff corporation. As such he was paid the highest salary of any employee and therefore he was the greatest beneficiary of the profit sharing plan.

An analysis of the profit sharing plan leaves little doubt as to whether it was a consideration for defendants' covenants. The plan was drawn up by plaintiff; it was subject to amendment by plaintiff; it was amended by plaintiff to reduce, and for a period of two years eliminate, contributions to the plan; it imposed a three-year limitation on competition by former employees and the greatest benefit of the plan accrued to plaintiff's president and owner, Jules Buxbaum. We find this consideration to be illusory as to defendants. "A consideration

---

**Wilmar, Inc. v. Liles and Wilmar, Inc. v. Polk**

---

cannot be constituted out of something that is given and taken in the same breath— . . . . " *Kadis v. Britt,* 224 N.C. 154, 163, 29 S.E. 2d 543, 548 (1944).

Somewhat analogous to the facts in this case is the following statement by the court in *Super Maid Cook-Ware Corporation v. Hamil, supra:* "Without guaranteeing to the defendants one day's regular work, without the obligation of the appellant to employ them or pay them anything, upon a seductive promise of the disclosure of information upon which they may hope to build a profitable line of sales, the appellees are induced to sign a paper which, while it has the general appearance of a contract, but keeps the promise to the ear while it breaks it to the hope. Such a contract, wanting in mutuality, presenting no equitable considerations, a court of equity will not enforce. (Citations)"

To be enforceable, a covenant not to compete must protect some substantial interest of the employer. We are not convinced from the evidence in this case that defendants had access to any trade secrets. Defendants were already employees of plaintiff at the time the contracts were executed. They had acquired a knowledge of plaintiff's business methods, customer list and territories prior to the execution of the contracts. The plaintiff had failed to protect his interest at the time the defendants came into his employment. By the contracts plaintiff was merely attempting to close the barn door after the horse was out.

The inescapable conclusion then is that in actuality the restrictive covenant not to compete here sought to be enforced is not an ancillary contract at all. It is the main purpose of the contract and not a subordinate feature. It becomes and is, therefore, a naked contract not to compete not protected as to enforceability by the exceptions afforded ancillary contracts in restraint of trade permissible in connection with the sale of a going business, a contract of employment, or a lease.

For the reasons stated the order appealed from is

Reversed.

Judges MORRIS and PARKER concur.