Raja v. Patel, 2017 NCBC 25.

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| MECKLENBURG COUNTY | 16 CVS 4472 |

MANJULA RAJA, TRUSTEE OF
BHARTI SONA TRUST, and KIRIT
PATEL, individually and on behalf of
Sovereign Hospitality of Little Rock,
LLC,

        Plaintiffs,

v.

JAYESH PATEL and DIPAK M.
DEVA,

        Defendants.

  and

SOVEREIGN HOSPITALITY OF
LITTLE ROCK, LLC,

        Nominal Defendant.

**ORDER AND OPINION ON
DEFENDANTS' MOTIONS TO DISMISS**

1.    **THIS MATTER** is before the Court upon Defendants Jayesh Patel ("Jayesh") and Dipak M. Deva's ("Deva") (collectively, "Defendants") (i) Motion to Dismiss pursuant to Rule 12(b)(6) ("12(b)(6) Motion") and (ii) Motion to Dismiss pursuant to N.C. Gen. Stat. § 57D-8-03, and, in the Alternative, Motion pursuant to N.C. Gen. Stat. § 57D-8-03(f) ("Chapter 57D Motions") (collectively, "Motions to Dismiss" or "Motions") in the above-captioned case.

2.    The Court, having considered the Motions, briefs in support of and in opposition to the Motions, and arguments of counsel made at the hearing on the Motions, acting *ex mero motu*, hereby **DISMISSES** Plaintiffs' action without prejudice for lack of subject matter jurisdiction.

*Kilpatrick Townsend & Stockton LLP, by Alan D. McInnes, for Plaintiffs Manjula Raja, Trustee of Bharti Sona Trust, and Kirit Patel.*

*Horack, Talley, Pharr & Lowndes, P.A., by Robert B. McNeill, Phillip E. Lewis, and Terry M. Brown, Jr., for Defendants Jayesh Patel and Dipak M. Deva.*

Bledsoe, Judge.

I.

PROCEDURAL HISTORY

3.  Plaintiffs Manjula Raja ("Raja"), Trustee of the Bharti Sona Trust (the "Trust"), and Kirit H. Patel ("Kirit"), (collectively, "Plaintiffs"), individually and on behalf of Sovereign Hospitality of Little Rock, LLC ("Company" or "Sovereign"), filed this action on March 10, 2016.  Plaintiffs' Verified Complaint ("Complaint") purports to assert claims against Defendants, directly and derivatively, for (i) breach of their duty of loyalty as co-member-managers of Sovereign, (ii) breach of fiduciary duty as co-member-managers of Sovereign, (iii) civil conspiracy, (iv) unfair or deceptive trade practices under N.C. Gen. Stat. § 75-1.1, (v) accounting, and (vi) declaratory judgment.  Plaintiffs also assert a direct claim against Jayesh and Deva for fraud and seek damages and injunctive relief on all claims.

4.  Plaintiffs timely filed a Notice of Designation in the circumstances of this case on April 13, 2016.  The case was designated as a mandatory complex business case by order of the Chief Justice of the Supreme Court of North Carolina dated April 15, 2016 and assigned to the undersigned on April 18, 2016.

5.  The Court subsequently stayed activity in the case, with the parties' consent, to permit the parties to attempt to negotiate a resolution of this dispute.

Defendants filed the Motions with supporting briefs on October 6, 2016 after expiration of the stay.

6. The 12(b)(6) Motion seeks to dismiss all direct claims that Plaintiffs assert against Jayesh and Deva and to dismiss derivative claims for unfair or deceptive trade practices, accounting, and declaratory judgment.

7. The Chapter 57D Motions seek to dismiss all derivative claims asserted on behalf of Sovereign, or, in the alternative, to have a panel appointed under N.C. Gen. Stat. § 57D-8-03(f) to determine whether maintenance of Plaintiffs' derivative proceeding is in the best interests of Sovereign.

8. The Motions have been fully briefed, and the Court held a hearing on the Motions on December 8, 2016, at which Plaintiffs and Defendants were represented by counsel. Counsel did not appear on behalf of Sovereign, as nominal defendant. The Motions are now ripe for resolution.

II.

FACTUAL BACKGROUND

9. Sovereign, a North Carolina limited liability company, has five members, each owning a twenty percent interest in the Company: the Trust, Kirit, Jayesh, Deva, and Nagin Patel (collectively, the "Members"). (Compl. ¶¶ 2–7.)

10. Dipak, Jayesh, and Kirit, who had been friends since the 1980s, decided in the late 1990s to organize Sovereign to construct and operate a hotel together. (Compl. ¶ 10.) Desiring an additional member and investor, they approached Raja,

who agreed to cause the Trust to invest and become a member in Sovereign. (Compl. ¶ 10.)

11. Under Sovereign's operating agreement (the "Operating Agreement"), Jayesh was designated as the sole managing-member of Sovereign. (Compl. ¶ 13.) On August 20, 2007, Sovereign's members executed a consent agreement by which Jayesh appointed Deva as a co-member-manager of Sovereign. (Compl. ¶¶ 6, 14.)

12. Between 2007 and 2010, Sovereign purchased 2.2418 acres in Mecklenburg County, North Carolina (the "Hotel Tract"), constructed a hotel (the "Hotel," together with the Hotel Tract, the "Property") on the Hotel Tract, and began operating the Hotel. (Compl. ¶¶ 12, 15.)

13. Effective May 1, 2009, Raja, Kirit, and Nagin Patel (collectively, the "Non-Managing Members") executed a consent document (the "May 1, 2009 Consent"), which superseded conflicting provisions in the Operating Agreement and provided, *inter alia*, that (i) the Non-Managing Members "will have no authority or involvement with the operation of the business unless requested by [Defendants]" and further that Defendants "will have full authority to operate [the] hotel and company to include (but not limited to) assignment, transfer of all or part of a Members [sic] interest in the company." (Compl. ¶ 16, Ex. B.)

14. According to Plaintiffs, the Hotel generated significant net income annually, primarily because of the low debt service cost on the initial loan of $8.3 million on the Property. (Compl. ¶¶ 17–19.) Sovereign's net income was distributed to the Members or held as capital for Sovereign. (Compl. ¶ 19.)

15. In July 2013, Sovereign purchased a tract adjoining the Hotel Tract (the "Adjoining Tract") to either expand the existing Hotel or construct a separate hotel (collectively the Hotel Tract, the Hotel, and Adjoining Tract, "Sovereign's Property"). (Compl. ¶ 20.)

16. In late May 2015, Defendants approached the Non-Managing Members about a potential sale of Sovereign's Property. (Compl. ¶ 22.) At that time, Deva advised Raja that Defendants intended to sell Sovereign's Property to a New York-based purchaser for $17 million, which Deva asserted was a very good price. (Compl. ¶¶ 23–25.) Defendants asked each Non-Managing Member to execute promptly a consent document relating to the proposed transaction with the New York purchaser. (Compl. ¶ 28.)

17. Plaintiffs allege that soon thereafter Raja asked Deva why Defendants had not refinanced to take some equity out of Sovereign in order to avoid the tax consequences associated with the proposed sale. (Compl. ¶ 32.) Plaintiffs allege that Deva replied that Defendants had tried to refinance Sovereign's debt but had been unsuccessful. (Compl. ¶ 33.) Raja then told Deva that she was concerned about the resulting tax liability if the Members sold Sovereign's Property. (Compl. ¶ 34.)

18. On June 1, 2015, each Member executed a consent agreement ("June 1, 2015 Consent"), which provided, in relevant part, that (i) the Members "agreed to sell or transfer of its [sic] interest/s based upon aforementioned value of $17,000,000.00," and (ii) Jayesh or Deva "shall facilitate and or conclude said transfer, sale, and

assignment of a member/s interest pursuant to [the May 1, 2009 Consent]." (Compl. ¶¶ 28, 39, Ex. D.)

19. On or about September 15, 2015, Defendants asked the Non-Managing Members to execute an addendum to the June 1, 2015 Consent ("Addendum") because Defendants reported that the sales price had been reduced to $16.4 million. (Compl. ¶¶ 41–43, Ex. F.) Plaintiffs allege that Jayesh falsely represented to each of the Non-Managing Members that the other Members had executed the Addendum to induce each of them to sign the Addendum. (Compl. ¶¶ 44–46.)

20. The Addendum provides, in relevant part, that (i) "the Members agree that the Fair Market Value of the Property (the "Property") is 16.4 Million Dollars ($16,400,000.00)," (ii) "the Members have agreed to sell or transfer [sic] [their] interest/s based upon aforementioned value of $16,400,000.00," (iii) Jayesh or Deva "shall facilitate and or conclude said transfer, sale, and assignment of a member/s interest pursuant to [the May 1, 2009 Consent]," and (iv) Defendants "will remain on board as co-managers of the Management Company; Deva-Rajsha Hotels, Inc[.], for the buyers and if desired will have the option to remain as shareholders of the Company." (Compl. ¶ 42, Ex. F.)

21. By October 2015, Raja and Kirit had become suspicious of Defendants' actions and began asking Defendants for documents relating to the proposed sale and for a conference call to discuss the proposed transaction. (Compl. ¶¶ 47–48, 53, 55.)

22. On or about October 7, 2015, Defendants sent the Non-Managing Members a proposed letter agreement (the "October 7, 2015 Letter"), which proposed that each

Non-Managing Member agree to "sell/transfer [his or her] individual interest[] in the Company back to the Company," "resign [his or her] position as member of the Company," "waive any further rights that [he or she] may[ ]have had with respect to the Company," and "release Sovereign . . . from any and all further obligations to [the Member]." (Compl. ¶ 50, Ex. H) ("October 7, 2015 Letter").

23. The Non-Managing Members did not execute the October 7, 2015 Letter. (Compl. ¶ 51.)

24. On October 9, 2015, Deva informed the Non-Managing Members that the transaction had closed and that Defendants would be charging a $50,000 management fee for their services in connection with the transaction. (Compl. ¶ 52.) The management fee had not been discussed or approved by the Non-Managing Members. (Compl. ¶ 52.) There are no allegations or evidence of record concerning whether the $50,000 management fee was paid to Defendants.

25. Shortly thereafter, Plaintiffs determined that Deva, as managing member of Sovereign SPE, Inc., granted a deed of trust on behalf of Sovereign on the Hotel Tract in the amount of $15.5 million in favor of CIBC, Inc. ("CIBC"), which was recorded on October 13, 2015 ("Deed of Trust"). The Deed of Trust reflected a loan from CIBC to Sovereign in the amount of $15.5 million (the "Refinanced Loan" or the "Loan"). (Compl. ¶¶ 56–57, Ex. L.)

26. Plaintiffs allege that both the amount of the Refinanced Loan and an appraisal conducted in connection with the Loan suggested that the value of the Hotel

Tract was more than $22 million, not the $16.4 million Defendants had represented to Plaintiffs. (Compl. ¶¶ 58–60.)

27. Plaintiffs allege that Defendants intended to use the proceeds from the Refinanced Loan and Sovereign's capital to purchase the Non-Managing Members' interests in Sovereign, based on Defendants' below-fair market-value, $16.4 million valuation of the Hotel Tract, and transfer those interests to entities that were owned or controlled by Defendants or their relatives. (Compl. ¶ 65.)

28. Plaintiffs further allege that Sovereign is now encumbered with substantial, additional debt of nearly $9,000,000, which significantly increases Sovereign's debt service. (Compl. ¶ 64; Manjula Raja Aff. ¶ 9.)

29. On September 22, 2016, and after this action had been pending for over six months, Defendants distributed funds to the Members, which included proceeds of the Refinanced Loan and $400,000 from a loan from Wells Fargo Bank related to the refinancing. (Manjula Raja Aff. ¶ 9.) Defendants subsequently filed the Motions on October 6, 2016.

III.

ANALYSIS

30. Defendants seek to dismiss Plaintiffs' direct claims for failure to state a claim under Rule 12(b)(6) and Plaintiffs' derivative claims through the process set forth in N.C. Gen. Stat. § 57D-8-03. Although not specifically addressed by the parties, the Court concludes that Plaintiffs' claims should be dismissed without prejudice for lack of standing.

31. "Standing is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction," *Street v. Smart Corp.*, 157 N.C. App. 303, 305, 578 S.E.2d 695, 698 (2003) (citations and internal quotation marks omitted), and "a threshold issue that must be addressed, and found to exist, before the merits of [the] case are judicially resolved[,]" *In re T.B.*, 200 N.C. App. 739, 742, 685 S.E.2d 529, 531–32 (2009) (alteration in original) (citations and internal quotation marks omitted). "Standing refers to whether a party has a sufficient stake in an otherwise justiciable controversy such that he or she may properly seek adjudication of the matter." *Am. Woodland Indus., Inc. v. Tolson*, 155 N.C. App. 624, 626, 574 S.E.2d 55, 57 (2002). It requires "'that the plaintiff have been injured or threatened by injury or have a statutory right to institute an action.'" *Bruggeman v. Meditrust Co., L.L.C.*, 165 N.C. App. 790, 795, 600 S.E.2d 507, 511 (2004) (quoting *In re Baby Boy Scearce*, 81 N.C. App. 531, 541, 345 S.E.2d 404, 410 (1986)). "If a party does not have standing to bring a claim, a court has no subject matter jurisdiction to hear the claim." *Estate of Apple v. Commercial Courier Express, Inc.*, 168 N.C. App. 175, 177, 607 S.E.2d 14, 16 (2005); *see, e.g.*, N.C. R. Civ. P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.").

32. "As the party invoking jurisdiction, plaintiff[] ha[s] the burden of establishing standing." *Queen's Gap Cmty. Ass'n v. McNamee*, 2011 NCBC LEXIS 37, at *3 (N.C. Super. Ct. Sept. 23, 2011) (dismissing action for lack of standing) (alteration in original) (quoting *Marriot v. Chatham Cnty.*, 187 N.C. App. 491, 494,

654 S.E.2d 13, 16 (2007)). A plaintiff establishes standing by "show[ing] facts that if accepted as true would demonstrate the existence of jurisdiction." *Grasinger v. Williams*, 2015 NCBC LEXIS 4, at \*16 (N.C. Super. Ct. Jan. 15, 2015) (granting in part and denying in part motion to dismiss for lack of standing). *See also Am. Woodland Indus.,* 155 N.C. App. at 627, 574 S.E.2d at 57 ("[P]laintiffs have the burden of proving that standing exists."). "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Neuse River Found. v. Smithfield Foods, Inc.*, 155 N.C. App. 110, 114, 574 S.E.2d. 48, 52 (2002) (quoting *Friends of Earth, Inc. v. Laidlaw Env. S.*, 528 U.S. 167, 185 (2000)).

33. A plaintiff's standing to assert its claims may be challenged under either Rule 12(b)(1) or Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. *See, e.g., Banyan Mezzanine Fund II v. Rowe*, 2016 NCBC LEXIS 38, at \*26, n.57 (N.C. Super. Ct. May 10, 2016) ("Whether challenged as a failure to state a claim . . . or a challenge to [plaintiffs'] standing . . . the question before the Court is the same: whether [plaintiffs] have alleged that they suffered an injury."). In addition, since "[s]tanding is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction, a court has inherent power to inquire into, and determine, whether it has jurisdiction and to dismiss an action *ex mero motu* when subject matter jurisdiction is lacking." *Willowmere Cmty. Ass'n v. City of Charlotte*, 792 S.E.2d 805, 808 (N.C. Ct. App. 2016) (alteration in original) (emphasis added) (citations and internal quotation marks omitted).

34. "In determining whether subject matter jurisdiction exists, a court may consider matters outside of the pleadings." *Keith v. Wallerich*, 201 N.C. App. 550, 554, 687 S.E.2d 299, 302 (2009) (citing *Tart v. Walker*, 38 N.C. App. 500, 502, 248 S.E.2d 736, 737 (1978)). "Since [the elements of standing] are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Neuse River Found.*, 155 N.C. App. at 113, 574 S.E.2d at 51 (alteration in original) (citations omitted). "Mere conclusory allegations in the complaint are insufficient to support jurisdiction." *Burgess v. Charlottesville Sav. & Loan Ass'n*, 477 F.2d 40, 43 (4th Cir. 1973).

35. In *Neuse River Foundation*, our Court of Appeals set out a three-step process for determining a plaintiff's standing to assert a claim:

> (1) 'injury in fact' — an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

155 N.C. App. at 114, 574 S.E.2d at 52 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

36. "Whether standing exists most often turns on whether the party has alleged an 'injury in fact' in light of the applicable statutes or case law." *Coker v. DaimlerChrysler Corp.*, 172 N.C. App. 386, 391, 617 S.E.2d 306, 310 (2005) (citing *Neuse River Found.*, 155 N.C. App. at 114, 574 S.E.2d at 52). "To be imminent, an

injury must 'proceed with a high degree of immediacy, so as to reduce the possibility of deciding a case in which no injury would have occurred at all.'" *Id.* (citing *Lujan*, 504 U.S. at 564, n.2). The injury in fact must be "distinct and palpable—and conversely that it not be abstract or conjectural or hypothetical." *In re Ezzell*, 113 N.C. App. 388, 392, 438 S.E.2d 482, 484 (1994) (citations and internal quotation marks omitted) (dismissing claims for lack of standing because alleged injury was "conjectural or hypothetical"). *See, e.g., Beachcomber Props., LLC v. Station One, Inc.*, 169 N.C. App. 820, 825, 611 S.E.2d 191, 194 (2005) (dismissing claims for lack of standing because plaintiff was "without a legally protected interest in the property" at issue).

37. Here, Plaintiffs have made conclusory allegations that they and Sovereign have suffered damages as a result of Defendants' conduct. (Compl. ¶¶ 75, 81, 85, 90, 95.) Despite numerous allegations of Defendants' wrongful acts, the only specific factual allegation in the Complaint which potentially can be read to assert that Defendants have caused Plaintiffs and Sovereign any injury is Plaintiffs' averment that "by refinancing without consent of the Non-Managing Members, [Defendants] increased the principal amount of the debt secured by the Hotel Tract by $8,995,788.15 thereby increasing the debt service significantly." (Compl. ¶ 64.)

38. Although Plaintiffs allege that "Defendants refinanced the property [through misrepresentations to Plaintiffs] in order to procure funds in an effort to buy out the other members of the Company and take control of the Company [at a "relatively low price"]," (Compl., Introduction, ¶¶ 62, 65), Plaintiffs do not allege or

advance evidence that Defendants were successful in purchasing the other members' interests in Sovereign. To the contrary, the parties do not dispute that Sovereign's five members and their relative ownership interests have not changed since the Company was formed in the late 1990s, (Compl. ¶¶ 2, 3, 5, 6, 7, 10, Answer ¶¶ 2, 3, 5, 6, 7, 10). Moreover, Raja's Affidavit states that funds obtained through and in connection with the Refinanced Loan were distributed to the five members on September 22, 2016. (Manjula Raja Aff. ¶ 11.) Thus, other than the increase in Sovereign's debt service, Plaintiffs have not alleged facts or offered evidence supporting their claim of injury in fact and did not forecast any such evidence in response to the Court's inquiries at the hearing.

39. The Court cannot conclude, on the facts as pleaded or supported with evidence here, that the increase in Sovereign's debt service has caused a legally cognizable injury to either Plaintiffs or Sovereign. First, to the extent that Sovereign's increased debt service is an injury, it is an injury suffered by Sovereign and all of its members according to their pro rata interests, not an injury separate and distinct to the individual Plaintiffs. *See, e.g.*, *Jackson v. Marshall*, 140 N.C. App. 504, 509, 537 S.E.2d 232, 235 (2000) (concluding that an injury was to the limited partnership, and not separate and distinct to plaintiff limited partner, because all limited partners were similarly affected by re-payment of the loan); *Kaplan v. O.K. Techs., L.L.C.*, 196 N.C. App. 469, 473–74, 675 S.E.2d 133, 137 (2009) (acknowledging that the North Carolina LLC Act treats LLC members like corporate shareholders); *see also Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 658–59, 488 S.E.2d 215, 219

(1997) (holding that absent a "special duty" or a "separate and distinct injury" a shareholder lacks standing to sue for an injury suffered by the corporation).

40. Moreover, unlike when a lender improperly adds fees to a loan balance and thereby increases a borrower's debt service[1], the increase in Sovereign's debt service here is the result of Sovereign's receipt of nearly $9 million in loan proceeds from a third-party lender on competitive terms. As such, whether Sovereign was harmed by the increase in debt service depends upon a consideration of numerous factors, both subjective and objective, including, on the one hand, whether the loan caused Sovereign to become insolvent or likely to default or otherwise suffer economic loss or injury of some kind, and, on the other hand, whether Sovereign's use of the $9 million in loan proceeds increased Sovereign's value to its members and justified the additional debt expense.

41. Plaintiffs, however, have not made any allegations or advanced any evidence concerning any economic loss or injury Sovereign may have suffered as a result of the Refinanced Loan or concerning Sovereign's use of the loan proceeds, including any allegation or proof that Defendants caused Sovereign to suffer injury through either the addition of the new debt or the increase in Sovereign's debt service.

---

[1] Numerous courts have recognized that an increase in a plaintiff's debt service through the addition of unlawful fees may state a legally cognizable injury. *See, e.g., DiGiacomo v. Statebridge Co., LLC*, No. 14-6694, 2015 U.S. Dist. LEXIS 82496, at *13 (D.N.J. June 25, 2015) (finding plaintiff had standing when "allegedly unlawful charges [were added] to [p]laintiff's loan balance"); *McMillan v. Bank of America, N.A.*, No. 14cv1575, 2015 U.S. Dist. LEXIS 58973, at *42 (S.D. Cal. Apr. 15, 2015) (finding plaintiff had standing where plaintiff alleged defendant "continually and indiscriminately assessed fees" which were added to plaintiff's mortgage).

42. As such, the Court cannot conclude that Plaintiffs' sole allegation and evidence of purported injury—that Defendants caused Sovereign to take on additional debt and thus increased debt service—establishes an injury in fact to either Sovereign or Plaintiffs on the allegations, claims, and evidence of record here. *See, e.g., Am. Tissue, Inc. v. Donaldson*, 351 F.Supp.2d 79, 100 (S.D.N.Y. 2004) (dismissing tort claim for lack of standing, in part, because complaint failed to allege plaintiff had suffered damages because of alleged increased debt service).

43. At most, Plaintiffs have alleged, without advancing supporting proof, the possibility of a future injury to Sovereign, which our courts have made clear is insufficient to establish a cognizable injury in fact. *See, e.g., Pierson v. Buyher*, 330 N.C. 182, 186, 409 S.E.2d 903, 906 (1991) (dismissing claim where "plaintiff had no more than an *expectancy . . .* no more than the *possibility* of future injury" and holding that "[u]ntil a party has a real and vested interest in the subject matter of a lawsuit, an action will not lie"); *Banyan Mezzanine Fund II*, 2016 NCBC LEXIS 38, at *24–30 (dismissing lender's claim because lender had not yet suffered an actual injury). Moreover, even if Plaintiffs' allegations can be seen as asserting a purported future injury, Plaintiffs have not pleaded or shown that any such future injury is "certainly impending," a further basis for dismissal on the record here. *See Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1141 (2013) ("[T]hreatened injury must be certainly impending to constitute injury in fact, and allegations of possible future injury are not sufficient.").

44. Accordingly, the Court concludes that, as currently presented, Plaintiffs' action should be dismissed in its entirety, without prejudice, and without consideration of the merits of Plaintiffs' purported claims.

45. A separate and independent basis also exists to dismiss Plaintiffs' claim for declaratory judgment and injunctive relief for lack of subject matter jurisdiction. As explained by our Supreme Court, "[t]he courts have no jurisdiction to determine matters purely speculative, enter anticipatory judgments, declare social status, deal with theoretical problems, give advisory opinions, answer moot questions, adjudicate academic matters, provide for contingencies which may hereafter arise, or give abstract opinions." *Little v. Wachovia Bank & Trust Co.*, 252 N.C. 229, 243, 113 S.E.2d 689, 700 (1960). A court's jurisdiction to declare rights, status, and other legal relations requires the presence of a real and existing controversy between the parties. N.C. Gen. Stat. § 1-253; *Adams v. N.C. Dep't of Natural & Econ. Res.*, 295 N.C. 683, 703, 249 S.E.2d 402, 413–14 (1978). If the pleadings do not contain allegations of a real and existing controversy, a claim for declaratory judgment must be dismissed. *La Familia Cosmovision Inc. v. Inspiration Networks*, 2014 NCBC LEXIS 52, at *14–15 (N.C. Super. Ct. Oct. 20, 2014) (citing *Kirkman v. Kirkman*, 42 N.C. App. 173, 176, 256 S.E.2d 264, 266 (1979)).

46. Applying these principles here, the Court concludes that Plaintiffs' declaratory judgment claim—which vaguely seeks a judgment "declar[ing] the respective rights of the parties in this matter," (Compl. ¶ 102)—does not allege a real, existing, and justiciable controversy between the parties and must be dismissed,

without prejudice. *See, e.g., Sharpe v. Park Newspapers of Lumberton, Inc.*, 317 N.C. 579, 584, 347 S.E.2d 25, 29 (1986) ("[I]n order for a court to have subject matter jurisdiction to render a declaratory judgment, an actual controversy must exist between the parties . . . ."). It follows that Plaintiffs' claim for injunctive relief, which is based entirely on Plaintiffs' declaratory judgment claim, must likewise be dismissed, without prejudice.

47. Similarly, separate jurisdictional grounds also exist that require dismissal of Plaintiffs' equitable claim for an accounting. Although Plaintiffs request "an accounting with respect to the books and records of the Company," (Compl. ¶ 99), Plaintiffs have not alleged either that Defendants have refused to honor their inspection rights under the LLC Act[2] or under Sovereign's Operating Agreement[3] or alleged facts that reveal that Plaintiffs lack an adequate remedy at law under the LLC Act or otherwise. As such, Plaintiffs have not shown that they have suffered an

---

[2] N.C. Gen. Stat. § 57D-3-04 establishes that members of a limited liability company have a statutory right to access and inspect books and records of an LLC. An LLC's operating agreement may provide additional inspection rights but it cannot "[s]upplant, vary, disclaim, or nullify" the inspection rights set forth in N.C. Gen. Stat. § 57D-3-04(a). N.C. Gen. Stat. § 57D-2-30(a), (b)(4).

[3] Sovereign's Operating Agreement provides that:

> The Manager shall cause the LLC to keep adequate books and records at its principal place of business, which shall set forth an accurate account of all transactions of the LLC. Any Member or its designated representative shall have the right to access during normal business hours, inspect and copy at its expense the contents of such books and records, provided the Member sends written notice to the custodian of the records at least five (5) business days prior to the date of inspection specifying the records or information desired and the purpose for the inspection.

(Jayesh Patel and Dipak M. Deva Aff., Ex. A, §10.1.)

actual injury in fact or one that can only be addressed through equity.[4]  Therefore, Plaintiffs lack standing to assert an equitable claim for an accounting on the record here, and, for this additional reason, that claim should be dismissed, without prejudice.

## IV.

## CONCLUSION

48.    Based on the foregoing, the Court hereby dismisses Plaintiffs' Complaint, without prejudice, for lack of subject matter jurisdiction.

**SO ORDERED**, this the 23rd day of March, 2017.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Special Superior Court Judge
 for Complex Business Cases

---

[4] *See, e.g.*, *Jefferson Standard Life Ins. Co. v. Guilford Co.,* 225 N.C. 293, 300, 34 S.E.2d 430, 434 (1945) ("Equity will not lend its aid in any case where the party seeking it has a full and complete remedy at law."); *Wilmar, Inc. v. Liles*, 13 N.C. App. 71, 74, 185 S.E.2d 278, 280 (1971) ("[E]quitable relief will be granted only when legal relief is inadequate, and the party [seeking equitable relief] must . . . alleg[e] and establish[] facts which will warrant the equitable remedy."). *See also, e.g.*, *Centre Dev. Co. v. Cnty. of Wilson*, 44 N.C. App. 469, 474, 261 S.E.2d 275, 278 (1980) (holding that where requested relief is available under statute, plaintiff has adequate remedy at law and may not recover in equity); *Gottfried v. Covington*, 2014 NCBC LEXIS 26, at \*17 (N.C. Super. Ct. June 25, 2014) (dismissing accounting claim, in part, for failing to allege facts showing plaintiff lacked adequate remedy at law).